No. 21-CV-07043 (JPC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE N. EVERETT,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
KATINA YESNICK, Assistant Principal of PS/MS 31,
ANGELA LISO, teacher at PS/MS 31,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT**

**STEPHANIE N. EVERETT**
***(PRO SE)***

1113 East 215th Street
Bronx, NY 10469
(347) 803-0903
stef850@gmail.com

Served February 28, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .............................................................................................2

ARGUMENT .................................................................................................................8

   POINT I .....................................................................................................................8
     PLAINTIFF MAY PURSUE HER RETALIATION CLAIM ................................8

   POINT II ....................................................................................................................9
     A NOTICE OF CLAIM IS NOT REQUIRED FOR FEDERAL CLAIMS
     AND FOR CLAIMS AGAINST ASSISTANT PRINCIPAL AND TEACHER
     ..................................................................................................................................9

   POINT III ................................................................................................................10
     PLAINTIFF HAS PLED ADEQUATE TIMELY RACIAL
     DISCRIMINATION CLAIMS ..........................................................................10
       A.   Title VII Claims .....................................................................................10
       B.   NYSHRL and NYCHRL Claims ............................................................12

   POINT IV .................................................................................................................13
     DEFENDANTS YESNICK AND LISO ARE SUBJECT TO LIABILITY
     UNDER THE NYSHRL OR THE NYCHRL ....................................................13

   POINT V ..................................................................................................................14
     PLAINTIFF HAS PLED PLAUSIBLE RACE DISCRIMINATION CLAIMS
     UNDER TITLE VII, NYSHRL AND NYCHRL ..............................................14
       A.   Standard of Law ......................................................................................15
       B.   Plaintiff Has Stated Valid Race Discrimination Claims .........................16
         1.   Plaintiff has indeed suffered multiple materially adverse actions......................16
         2.   Plaintiff has alleged facts showing discriminatory intent based on race............17
       C.   Plaintiff Has Pled Plausible Retaliation Claims......................................20
       D.   Plaintiff Has Pled Plausible Hostile Work Environment Claims............21

CONCLUSION............................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Alfano v. Costello,*
   294 F.3d 365, 373 (2d Cir. 2002) ........................................................................... 22

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678 (2009) ........................................................................................ 15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 570 (2007) ........................................................................................ 15

*Bermudez v. City of New York,*
   783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) ............................................................ 23

*Bonilla v City of NY,*
   2020 US Dist LEXIS 214410 (EDNY Oct. 3, 2020, No. 20 CV 1704 (RJD)(LB)) ................ 11

*Burlington Northern & Santa Fe Railway v. White,*
   543 U.S. 53 (2006) .................................................................................................. 21

*Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.,*
   990 F.2d 1397 (2d Cir. 1993) ................................................................................... 9

*Cleveland v. Caplaw Enters.,*
   448 F.3d 518 (2d Cir. 2006) ..................................................................................... 15

*Collins v. City of New York,*
   156 F.Supp.3d 448 (S.D.N.Y. 2016) ......................................................................... 9

*Davis-Garett v. Urban Outfitters, Inc.,*
   921 F.3d 30 (2d Cir. 2019) ....................................................................................... 12

*Dimitracopoulos v. City of NY,*
   26 F Supp 3d 200 (EDNY 2014) .............................................................................. 17

*Elgalad v. N.Y.C. Dep't of Educ.,*
   No. 17 Civ. 4849 (VSB), 2018 U.S. Dist. LEXIS 162838, 2018 WL 4572237, at *10
   (S.D.N.Y. Sept. 24, 2018) ........................................................................................ 21

*Espinal v. Goord,*
   558 F.3d 119 (2d Cir. 2009) ..................................................................................... 22

*Eubanks v NY City Dept. of Educ.,*
   2021 US Dist LEXIS 21771, at *46 (SDNY Feb. 3, 2021) ...................................... 21

*Feingold v. New York,*
   366 F.3d 138 (2d Cir. 2004) ..................................................................................... 14

*Fincher v. Depository Trust & Clearing Corp.,*
   604 F.3d 712 (2d Cir. 2010) ..................................................................................... 20

*Fisher v. Vassar Coll.*,
  114 F.3d 1332 (2d Cir. 1997).................................................................. 18

*Fitzgerald v. Henderson*,
  251 F.3d 345 (2d Cir. 2001)............................................................ 12, 22

*Galabya v. NY City Bd. of Educ.*,
  202 F3d 636 (2d Cir 2000)..................................................................... 17

*Gallagher v. Delaney*,
  139 F.3d 338 (2d Cir. 1998)................................................................. 18

*Greene v. Avoca Cent. Sch. Dist.*,
  2007 NY Slip Op 52117(U), 17 Misc. 3d 1122(a), 1122(A) (Sup. Ct. Steuben Co. 2007)...... 10

*Gurley v David H. Berg & Assoc.*,
  2022 US Dist LEXIS 20546, at *21-23 (SDNY Feb. 2, 2022)................................. 13

*Hausdorf v. NYCDOE*,
  2018 U.S. Dist. LEXIS 13330 (S.D.N.Y. Jan. 25, 2018)..................................... 2

*Ingram v. Nassau Health Care Corp.*,
  No. 17-CV-05556 (JMA)(SIL), 2019 U.S. Dist. LEXIS 49374, at *7 (E.D.N.Y. Mar. 25, 2019)
  ..................................................................................... 15

*Jaffier v. City of New York*,
  148 A.D.3d 1021 (2d Dept. 2017) ........................................................ 10

*Johnson v. Palma*,
  931 F.2d 203 (2d Cir. 1991).............................................................. 21

*Jordan v. City of New York*,
  41 A.D.3d 658 (2d Dept. 2007) .......................................................... 10

*Khwaja v. Jobs*,
  No. 1:19-cv-07070 (JPC) (SDA), 2021 U.S. Dist. LEXIS 65884 (S.D.N.Y. Mar. 26, 2021) .. 18

*Langella v. Mahopac Cent. Sch. Dist.*,
  No. 18-cv-10023 (NSR), 2020 U.S. Dist. LEXIS 95588, at *41 (S.D.N.Y. May 31, 2020).... 13

*Lawson v. New York City Bd. of Educ.*,
  No. 09 CIV. 1335(JSR)(HBP), 2011 U.S. Dist. LEXIS 127789, 2011 WL 5346091, at *20
  (S.D.N.Y. Aug. 30, 2011)
  *report and recommendation adopted*, No. 09 CIV. 1335 (JSR)(HBP), 2011 U.S. Dist. LEXIS
  127676, 2011 WL 5346090 (S.D.N.Y. Nov. 4, 2011). ....................................... 10

*Lenart v. Coach Inc.*,
  131 F. Supp. 3d 61 (S.D.N.Y. 2015)...................................................... 20

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)....................................................... 16, 18, 20

*Magnotti v. Crossroads Healthcare Mgmt., LLC*,
  126 F. Supp. 3d 301 (E.D.N.Y. 2015) ................................................... 20

*Malena v. Victoria's Secret Direct, LLC*,
    886 F. Supp. 2d 349 (S.D.N.Y. 2012)..................................................................................... 14

*Mandell v. County of Suffolk*,
    316 F.3d 368 (2d Cir. 2003)............................................................................................... 18

*Martin v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
    No. 17 Civ. 9721 (DLC), 2019 U.S. Dist. LEXIS 78492, 2019 WL 2053992, at *5 (S.D.N.Y.
    May 9, 2019),
    *aff'd sub nom. Martin v. New York*, 799 F. App'x 68 (2d Cir. 2020)). ...................................... 14

*Mauro v. New York City Dep't of Educ.*,
    No. 19 Civ. 4372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 76379, 2020 WL 5899522, at *8
    (S.D.N.Y. Apr. 29, 2020),
    *report and recommendation adopted*, No. 19 Civ. 4372 (GBD) (KHP), 2020 U.S. Dist. LEXIS
    120830, 2020 WL 3869206 (S.D.N.Y. July 9, 2020) ............................................................. 14

*McDonnell Douglas Corp., v. Green*,
    411 U.S. 792 (1973)................................................................................................... 15, 18

*Mendell v. Salamanca Hous. Auth.*,
    12 A.D.3d 1023 (4th Dept. 2004) ...................................................................................... 10

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)............................................................................................... 23

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)............................................................................................... 16

*Modica v. N.Y.C. Dep't of Educ. et al.*,
    No. 20-CV-4834 (JMF), 2021 U.S. Dist. LEXIS 146041 (S.D.N.Y. Aug. 4, 2021)................. 2

*Morales v Div. of Youth & Family Justice*,
    2019 US Dist LEXIS 126891, at *21-22 (SDNY July 30, 2019, No. 14cv7253 (JGK)) .......... 9

*Mtr. of Hinton v. New Paltz Cent. School Dist.*,
    50 A.D.3d 1414 (3d Dept. 2008) ...................................................................................... 10

*Murray v. NYC Board of Education*,
    No. 15-cv-03191(RRM) (ST) (E.D.N.Y. March 21, 2019) ...................................................... 2

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101, 113–14, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002)......................................... 12

*Nielsen v. Rabin*,
    746 F.3d 58 (2d Cir. 2014)................................................................................................. 2

*Perry v. Ethan Allen, Inc.*,
    115 F.3d 143 (2d Cir. 1997)............................................................................................... 22

*Raspardo v. Carlone*,
    770 F.3d 97 (2d Cir. 2014)................................................................................................. 22

*Richardson v. New York State Dep't of Correctional Serv.*,
    180 F.3d 426 (2d Cir. 1999)......................................................................................... 17, 22

*Schneider v. Wal-Mart Stores, Inc.,*
  No. 16-cv-2010 (NSR), 2019 U.S. Dist. LEXIS 10903, 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019) .............................................................................................. 13

*Shumway v. United Parcel Serv., Inc.,*
  118 F.3d 60 (2d Cir. 1997) .................................................................................. 18

*Summa v. Hofstra Univ.,*
  708 F.3d 115 (2d Cir. 2013) ................................................................................ 23

*Thomson v. Odyssey House,*
  No. 14-CV-3857 (MKB), 2015 WL 5561209, at *24 (E.D.N.Y. Sept. 21, 2015), aff'd, 652 F. App'x 44 (2d Cir. 2016) (summary order) ................................................... 16

*Torres v. Pisano,*
  116 F.3d 625 (2d Cir. 1997) ................................................................................ 22

*Treglia v. Town of Manlius,*
  313 F.3d 713 (2d Cir. 2002) ................................................................................ 17

*Vega v. Hempstead Union Free Sch. Dist.,*
  801 F.3d 72 (2d Cir. 2015) .................................................................................. 18

*Wanamaker v. Columbian Rope Co.,*
  108 F.3d 462 (2d Cir. 1997) ................................................................................ 17

*Washington v. County of Rockland,*
  373 F.3d 310 (2d Cir. 2004) ................................................................................ 12

*Whidbee v. Garzarelli Food Specialties, Inc.,*
  223 F.3d 62 (2d Cir. 2000) .................................................................................. 22

*White v. Roosevelt Union Free School District,*
  2017 U.S. Dist. LEXIS 210480 (E.D.N.Y. Dec. 20, 2017) ....................................... 2

*Woods v. Enlarged City Sch. Dist. of Newburgh,*
  473 F. Supp. 2d 498 (S.D.N.Y. 2007) .................................................................. 21

*Zagerson v. N.Y.C. Dep't of Educ.,*
  Civil No. 20 Civ. 11055 (KPF), (S.D.N.Y. Jan. 31, 2022) ....................................... 2

**Statutes**

N.Y. Exec. Law § 296(6) ....................................................................................... 14

New York City Human Rights Law ("NYCHRL"), .................................. 14, 16, 20, 23

New York Education Law § 2(13) ........................................................................... 10

New York Education Law § 3813(1) ......................................................................... 9

New York Education Law § 3813(2) .................................................................. 10, 12

New York State Human Rights Law ("NYSHRL"),
  N.Y. Exec. Law § 296 et seq ........................................................................ 13, 15, 23

NYCHRL § 8-107(6) ............................................................................................. 14

NYSHRL § 296(6) ................................................................................................. 14

Title VII of the Civil Rights Act of 1964 ("Title VII"),
   42 U.S.C. § 2000e et. seq. ............................................................................. 15

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

STEPHANIE N. EVERETT,

                           Plaintiff,

                -against-                       **21-CV-07043 (JPC)**

NEW YORK CITY DEPARTMENT OF EDUCATION,
KATINA YESNICK, Assistant Principal of PS/MS 31,
ANGELA LISO, teacher at PS/MS 31,

                        Defendants.

----------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff *pro se* STEPHANIE EVERETT ("Plaintiff" or "Everett"), an elementary school teacher employed by the New York City Department of Education ("NYCDOE"), submits this memorandum of law in response to Defendants' motion to dismiss her complaint in this employment discrimination action. Ms. Everett commenced this action based on race discrimination, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § 2000e et. seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; and the New York City Human Rights Law, N.Y.C. Administrative Code §§8-101 et. seq. ("NYCHRL").

Defendants' motion is premature at this juncture and should be denied, as Ms. Everett has stated valid claims of racial discrimination and retaliation. Defendants' motion reaches far beyond what is appropriate for a motion to dismiss, and courts have routinely denied motions of this type against teachers at this early stage of litigation. *See Hausdorf v. NYCDOE*, 2018 U.S. Dist. LEXIS

1

13330 (S.D.N.Y. Jan. 25, 2018); *White v. Roosevelt Union Free School District*, 2017 U.S. Dist. LEXIS 210480 (E.D.N.Y. Dec. 20, 2017); *Murray v. NYC Board of Education,* No. 15-cv-03191(RRM) (ST) (E.D.N.Y. March 21, 2019); *Modica v. N.Y.C. Dep't of Educ. et al.*, No. 20-CV-4834 (JMF), 2021 U.S. Dist. LEXIS 146041 (S.D.N.Y. Aug. 4, 2021); *Zagerson v. N.Y.C. Dep't of Educ.*, Civil No. 20 Civ. 11055 (KPF), (S.D.N.Y. Jan. 31, 2022). Therefore, Defendants' motions to dismiss the complaint should be denied, and this matter should be continued for pretrial discovery and an eventual trial.

Alternatively, if the Court is inclined to find that more factual detail is necessary, Ms. Everett respectfully requests leave to file an amended complaint to address any deficiencies identified by the Court. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

## STATEMENT OF FACTS

Ms. Everett has been teaching as an elementary school teacher for the New York City Department of Education (NYCDOE) since September 2017. *Compl.* ¶ 1. She was employed as a first grade teacher for PS/MS 31, a District 7 school in the Bronx, NY, within the NYCDOE, from September 2017 to late August 2020. *Id.* ¶ 3. She was excessed from PS/MS 31 in the summer of 2020, and found a kindergarten teacher position at PS 63 in the Bronx, NY. *Id.* ¶ 4. She has been teaching at PS 63 in the Bronx, NY since September 2020. *Id.* ¶ 5. Katina Yesnick is the Assistant Principal ("AP") of the elementary school for PS/MS 31. She is white/Caucasian. *Id.* ¶ 6.

During the time Ms. Everett was a teacher at PS/MS 31, she received Effective as an overall rating based on Advance rating Reports in the 2017-18 and 2018-19 school years[1]. She also is a

---

[1] As to Defendants' statement in their Memorandum of law regarding Ms. Everett receiving Effective ratings from AP Yesnick for the 2017-18 and 2018-19 school years (Def. Mem. at 2), it should be noted that during these school years, Ms. Everett got support and was encouraged by AP Diedra Thomas, resulting in a great relationship with AP Thomas. Immediately after Ms. Thomas left PS/MS 31 to serve as principal in another District 7 school, Ms. Everett started to receive negative observations from AP Yesnick.

two-time recipient of the Teachers of Tomorrow award for both the 2017-18 and 2018-19 school years. *Id.* ¶ 7.

However, during the 2019-20 school year, Ms. Everett received negative ratings for her observation reports from AP Yesnick, including some ineffective ratings in the evaluations, even though she has never received an ineffective as a rating during the previous years she worked at the school. She did not receive a final rating that year due to the pandemic, but was excessed from the school at the end of the 2019-20 school year. *Id.* ¶ 8.

Ms. Everett believes that she was discriminated against by AP Yesnick in the form of negative observation ratings and an unjustified disciplinary letter in her file (falsely stating she was not present at a professional development session), because of her race and AP Yesnick's close relationship with Angela Liso, a white first grade teacher at the school. *Id.* ¶ 9. AP Yesnick and Angela Liso are both Caucasian, and Ms. Everett is Black of Caribbean descent. *Id.* ¶¶ 2, 10.

On Wednesday, March 13, 2019, at 8:05 a.m. at a math workshop held at the PS 179 school in the Bronx, AP Yesnick and Ms. Liso walked into the PS 179 library where the workshop was being held. By this time, Ms. Everett was already at the workshop. During this time, AP Yesnick and Ms. Liso both sat next to each other, completely ignoring Ms. Everett's presence as they talked with each other. *Id.* ¶ 11. AP Yesnick and Ms. Liso demonstrated discrimination against women of color after the workshop ended. This occurred when they falsely claimed that the school's literacy coach for kindergarten through second grade, Ms. Sakena Purvis (who is also African American) "was useless and doesn't know what she is doing'' to Ms. Jennifer Kneeland. This conversation happened in front of Ms. Everett. *Id.* ¶ 12. Ms. Kneeland, who is also Caucasian, used to work with AP Yesnick and Ms. Liso at PS 31 and now works as a literacy coach for PS 179. During this time, AP Yesnick and Ms. Liso told Ms. Kneeland that they wanted her to be their

school's literacy coach, and would try to get her in for this position. *Id.* ¶ 13. On the contrary, both Ms. Yesnick and Ms. Liso showed respect towards elementary math coach Ms. Jane Nickelsberg, who is White, although Ms. Nickelsberg was rarely at the school and failed to give the necessary tools for implementing math lesson plans and to complete tasks related to her job. Ms. Liso even said about Ms. Nickelsberg that "she's so helpful'' on March 15, 2019 to a group of teachers.

On November 22, 2019, AP Yesnick observed Ms. Everett's teaching and rated her Ineffective. The lesson AP Yesnick observed was a literacy lesson that Ms. Everett previously planned with Ms. Purvis. Ms. Everett has been planning her lessons with Ms. Purvis since she first started working at PS 31 in September 2017. *Id.* ¶ 14.

On December 3, 2019, Ms. Everett met with AP Yesnick to discuss her first informal observation, which she conducted on November 22, 2019. At this December 3, 2019, meeting, AP Yesnick disregarded Ms. Everett's expertise as an educator, and compared her to the white teacher Ms. Liso by saying the following statement, "Maybe teaching is not for you, and you're lucky you have someone, poor Ms. Liso has no one, she feels so overwhelmed, she had the high class last year, but this year Ms. Liso has the ELLs (English Language Learners).'' *Id.* ¶ 14. During that meeting, AP Yesnick not only disregarded Ms. Everett's contributions as a general education teacher for an ICT classroom and an educator as a whole, but also falsely stated that a teacher candidate who was supposed to work with her, who interviewed to fill for the special education teacher position for her classroom after Ms. Flaherty quit, did not have the right qualifications for the position. This is despite the fact that this teacher candidate, a Latin woman of Caribbean descent, managed the class and executed the lesson efficiently, when she came to the school on November 26, 2019, two days before the Thanksgiving holiday, but AP Yesnick refused to hire her. *Id.* ¶ 15. AP Yesnick instead decided to wait until January 31, 2020, two months after, to have

another special education teacher from another classroom in the school, work with Ms. Everett in the ICT team teaching setting. The special education teacher was Sara Hanauer, who is of Orthodox Jewish descent (White), and a friend of Ms. Liso. *Id.* ¶ 16.

AP Yesnick would only talk to Ms. Hanauer and not with Ms. Everett. For instance, Ms. Everett would not be aware of a situation involving a student until after it was already discussed between AP Yesnick and Ms. Hanauer. Due to Ms. Everett's race, Ms. Hanauer also disregarded her teaching skills and threw a behavior checklist that Ms. Everett previously used in the classroom in the garbage, and told her in an insulting fashion on January 31, 2020, "Since I am here, this is the best read aloud lesson these kids have ever had." *Id.* ¶ 17.

Similar to AP Yesnick and Ms. Liso, Ms. Hanauer also discriminated against Ms. Purvis, who is Black. Ms. Hanauer said that "Ms. Purvis does not know what she is doing'', and walked out of the classroom, when Ms. Purvis was modeling a literacy lesson, so Ms. Everett and Ms. Hanauer could continue to grow in their teaching practices. Ms. Hanauer said that repeatedly from January 31, 2020, until the end of the school year. *Id.* ¶ 18.

Several days after the December 3, 2019, meeting with AP Yesnick, Ms. Everett received a copy of her literacy lesson observation that was done by AP Yesnick, which included scores of ineffective ratings in certain categories. AP Yesnick not only made Ms. Everett look like an incompetent teacher, but also compared her unfavorably to Ms. Liso, a Caucasian teacher who should have never been mentioned in this discussion. *Id.* ¶ 19.

On Friday, December 20, 2019, Ms. Everett received an unjustified disciplinary letter from AP Yesnick about not attending a CTLE professional development session, the same day she refused a Christmas gift from Ms. Liso, because of a snapchat incident, where she videotaped Ms. Everett without her permission, and engaged in other situations of disrespect towards Ms. Everett,

where Ms. Liso reacted by cursing and insulting her. *Id.* ¶ 20. AP Yesnick's disciplinary letter falsely accused Ms. Everett of not going to a CTLE professional development session on December 9, 2019, and instead staying in her classroom to talk to her union representative. However, according to the December 9, 2019, CTLE agenda that day, the meeting was supposed to be held in Room 118, Ms. Everett's classroom *Id.* ¶ 21. Ms. Everett thought the meeting was canceled since no one came to her classroom. Additionally, Ms. Everett would not have missed a professional development session, since she was taking evening classes at the Hunter College Literacy Graduate Program to continue her growth in the teaching field. Although Ms. Liso was present during the incident, her name was not mentioned on the disciplinary letter which only refers to "both teachers".

On January 5, 2020, Ms. Everett filed an OEO complaint with the NYCDOE against AP Yesnick and  Ms. Liso. *Id.* ¶ 22.

On January 9, 2020, AP Yesnick observed Ms. Everett in her classroom and gave her negative ratings. On Monday, January 27, 2020, at 2:40 pm, Ms. Everett met with AP Yesnick to discuss her informal observation. During this meeting, Ms. Everett informed AP Yesnick that she has been continuing to plan after school to grow in her teaching. This is when AP Yesnick pretended to not know who Ms. Everett planned with and began to show a confused look, asking, "Who did you plan with?'' This is despite the fact that she saw the literacy coach Ms. Purvis and Ms. Everett planning together a few days prior, in Ms. Purvis's office. The meeting held on January 27, 2020, demonstrated AP Yesnick's discrimination towards women of color by not only disregarding Ms. Purvis's skills as a literacy coach with the statement "who did you plan with?," but also Ms. Everett's work ethic as an educator by giving her unfavorable ratings on this literacy lesson observation as well. *Id.* ¶ 23.

At a schoolwide videoconference staff meeting held on June 1, 2020, Ms. Everett learned that AP Yesnick had deliberately excluded her from a grade-based meeting on May 26, 2020, and discussed the thematic unit "using your imagination", with the other first grade teachers, including mentioning Ms. Liso's name. Ms. Everett believes she was excluded due to her race, even though it was a project that the entire first grade had participated in. *Id.* ¶ 24. During the June 1, 2020, meeting, AP Yesnick continued to show racial discrimination against women of color, when she failed to acknowledge Ms. Everett's presence at an important school literacy event called "sip and chat", and instead falsely stated that Madeline Bodnar, the special education teacher for a second grade classroom, did a great job planning the event. *Id.* ¶ 25. Ms. Bodnar, who is Caucasian and a friend of AP Yesnick and Ms. Liso, was originally not going to attend the literacy event, and did not prepare for the event. In addition, Ms. Bodnar took full credit for work that was done by Ms. Purvis, even though she was fully aware that she did not do any work pertaining to the sip and chat event. *Id.* ¶ 26-27. Ms. Bodnar is another employee at the school who also has previously disregarded and degraded the expertise of Ms. Purvis. *Id.* ¶ 28.

Based on the events above, Ms. Everett believes she was racially discriminated against at her prior school. As a remedy, she is requesting removal of the poorly rated observations dated November 22, 2019, and January 9, 2020, from both her personnel file and the Advance NYCDOE website, as well as the removal of the unjustified disciplinary letter and rebuttal letter from her file, monetary damages, and any other relief appropriate for this situation. *Id.* ¶ 29.

On January 6, 2021, Ms. Everett dually filed a discrimination charge with the New York State Division of Human Rights ("SDHR") and U.S. Equal Employment Opportunity Commission ("EEOC").

Since the filing of her SDHR/EEOC complaint, Ms. Everett has suffered additional retaliation by having her tenure extended at her new school, PS 63, at the end of the 2020-21 school year. Ms. Everett was told by her current principal that her rating at PS 31 in the 2019-20 school year caused him to extend her tenure. *Id.* ¶ 30.

## ARGUMENT

Defendants have raised various arguments seeking to dismiss the causes of action Ms. Everett alleged under federal and state law. Ms. Everett asks the Court to construe the complaint liberally as a *pro se* litigant in this action.

## POINT I

## PLAINTIFF MAY PURSUE HER RETALIATION CLAIM

In their Memorandum of law, Defendants argue that Plaintiff has failed to exhaust her administrative remedies with respect to her Title VII retaliation claim as Plaintiff failed to check the box for "Retaliation" on her SDHR complaint form and failed to mention any facts alluding to retaliation based on protected activity in the attached documents to her SDHR claim (Def. Mem. at 5-6).

"Although a plaintiff has not exhausted her administrative remedies, she may still pursue her claim in federal court if that claim is "reasonably related" to claims alleged in the complaint with the EEOC". *Morales v Div. of Youth & Family Justice*, 2019 US Dist LEXIS 126891, at *21-22 (SDNY July 30, 2019, No. 14cv7253 (JGK)). "Under *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397 (2d Cir. 1993), a claim is "reasonably related" if: (1) the conduct complained of would fall within the scope of the EEOC investigation for the explicit claims asserted in the complaint with the EEOC; (2) the conduct complained of is retaliation for the complaint filed with

the EEOC; or (3) the conduct consists of incidents of discrimination "carried out in precisely the same manner alleged in the EEOC charge."' *Id.*

Here, Ms. Everett alleged that her tenure was extended in retaliation for filing her dual complaint with the SDHR and EEOC on January 6, 2021, which corresponds to a reasonably related claim as defined in *Butts* in situation (2). Therefore, Ms. Everett may still pursue her retaliation claims.

## POINT II

## A NOTICE OF CLAIM IS NOT REQUIRED FOR FEDERAL CLAIMS AND FOR CLAIMS AGAINST ASSISTANT PRINCIPAL AND TEACHER

New York Education Law § 3813(1) requires the filing of a notice of claim before commencement of a civil action against a Board of Education under state law. Such notices of claim are necessary when bringing actions pursuant to the New York State Human Rights Law, but have no bearing on Ms. Everett's federal claims. *See Collins v. City of New York,* 156 F.Supp.3d 448, 460 (S.D.N.Y. 2016).

In addition, notices of claim are not necessary to be filed against individual defendants such as Assistant Principal Katina Yesnick and Angela Liso. *See id.* While Superintendents qualify as officers upon whom a notice of claim must be filed, it is well-settled that principals and assistant principals do not. N.Y. Educ. Law § 2(13); *Lawson v. New York City Bd. of Educ.,* No. 09 CIV. 1335(JSR)(HBP), 2011 U.S. Dist. LEXIS 127789, 2011 WL 5346091, at *20 (S.D.N.Y. Aug. 30, 2011) ("[I]t is clear that a principal is not an officer of a board of education."), *report and recommendation adopted*, No. 09 CIV. 1335 (JSR)(HBP), 2011 U.S. Dist. LEXIS 127676, 2011 WL 5346090 (S.D.N.Y. Nov. 4, 2011). The statutory text of N.Y. Educ. Law § 3813(2) indicates that administrators, teachers, and other school employees are not included within the scope of § 3813(1). *Id.*

Furthermore, when an individual has demonstrated that a municipality acquired timely knowledge of the essential facts of a claim, this establishes a lack of prejudice to the municipality. *Jaffier v. City of New York,* 148 A.D.3d 1021, 1022 (2d Dept. 2017); *Jordan v. City of New York,* 41 A.D.3d 658, 660 (2d Dept. 2007). Additionally, when a plaintiff submits a charge of discrimination to an administrative body within the statutory time period and which sufficiently informs the municipality or school district of the claim, the charge has been held to satisfy the notice of claim requirement. *See Mendell v. Salamanca Hous. Auth.*, 12 A.D.3d 1023, 1024 (4th Dept. 2004); *Mtr. of Hinton v. New Paltz Cent. School Dist.,* 50 A.D.3d 1414 (3d Dept. 2008); *Greene v. Avoca Cent. Sch. Dist.,* 2007 NY Slip Op 52117(U), 17 Misc. 3d 1122(a), 1122(A) (Sup. Ct. Steuben Co. 2007).

Therefore, the lack of a notice of claim filing here should not bar Ms. Everett's federal or state claims against any Defendants.

## POINT III

## PLAINTIFF HAS PLED ADEQUATE TIMELY RACIAL DISCRIMINATION CLAIMS

### A. Title VII Claims

Ms. Everett pled adequate timely Title VII claims within 300 days of the filing of her dual filed discrimination charge with the SDHR and EEOC on or about January 6, 2021, dating back to March 12, 2020, including being excessed, being excluded from videoconference staff meetings, being ignored, disregarded and degraded for important school literacy events, and having her probationary period extended in retaliation for filing her SDHR complaint.

Defendants argue that "Plaintiff's Title VII claims are largely time-barred" (Def. Mem., at 6). However, Defendants acknowledge that Ms. Everett has pled timely adverse actions and only claim that some of her claims would be time-barred.

Furthemore, Governor Andrew Cuomo's COVID-19 related Executive Orders beginning on March 20, 2020, and continuing until November 3, 2020, tolled the deadlines to commence any civil legal action. *See* EO 202.8, 202.14, 202.28, 202.67. In light of the COVID-19 pandemic, the EEOC also recognized that complainants may face challenges that preclude them from meeting the regulatory timeframes set forth in 29 C.F.R. Part 1614 and therefore, instructed that the regulatory timeframes will be subject to the equitable tolling provisions set forth in 29 C.F.R. §1614.604(c). *See also Bonilla v City of NY*, 2020 US Dist LEXIS 214410 (EDNY Oct. 3, 2020, No. 20 CV 1704 (RJD)(LB)).

Here, shortly after Ms. Everett received negative observation ratings dated November 22, 2019 and January 9, 2020, and a disciplinary letter dated December 20, 2019, the Covid-19 pandemic hit. Ms. Everett was then excessed in the summer of 2020. Taking into account Executive Orders related to the COVID-19 pandemic, claims that accrued on or after May 25, 2019, are timely.

In any event, discriminatory adverse actions that occurred before May 2019 provide relevant background evidence to Ms. Everett's timely claims, and are certainly relevant to her hostile work environment claims. *See Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (noting that "even with respect to a claim of discrete discriminatory or retaliatory acts, expiration of limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim") (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113–14, 122 S. Ct. 2061, 153 L.Ed.2d 106, at 113 (2002)).

Moreover, the continuing violation doctrine provides an exception to untimeliness of claims, as it states that if "a plaintiff has experienced a continuous practice and policy of discrimination …, the commencement of the statute of limitations period may be delayed until the

last discriminatory act in furtherance of it." *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 349 (2d Cir. 2001)). Under this theory, a plaintiff may recover for acts occurring more than 300 days before the charge was filed with the EEOC, or the equivalent state agency, so long as the acts were part of the same hostile work environment and at least one such act occurred within the 300-day period. *See Morgan*, 536 U.S. at 116-17. Here, Ms. Everett alleges there was a hostile work environment from her administration that commenced during the 2018-19 school year and continues to the present with yet the extension of her tenure, which is a new adverse action reasonably related to her initial SDHR/EEOC filing.

### B. NYSHRL and NYCHRL Claims

Education Law §3813 (2-b) in relevant part states: "Except as provided in subdivision two of this section and, notwithstanding any other provision of law providing a longer period of time in which to commence an action or special proceeding, no action or special proceeding shall be commenced against any entity specified in subdivision one of this section more than one year after the cause of action arose…". Defendants have interpreted this to mean that any adverse actions occurring more than one year before August 19, 2021 are time-barred (Def. Mem. at 6).

Although the Second Circuit has yet to decide the issue, numerous courts in this Circuit have determined that the filing of an EEOC charge generally tolls the statute of limitations on related NYSHRL claims. *See Schneider v. Wal-Mart Stores, Inc.,* No. 16-cv-2010 (NSR), 2019 U.S. Dist. LEXIS 10903, 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019) (collecting cases); *Langella v. Mahopac Cent. Sch. Dist.,* No. 18-cv-10023 (NSR), 2020 U.S. Dist. LEXIS 95588, at *41 (S.D.N.Y. May 31, 2020).

Applying the reasoning in *Langella*, Ms. Everett commenced this action on August 19, 2021, meaning that, without tolling, any claims of discrimination, retaliation, or a hostile work environment arising out of conduct that occurred prior to August 19, 2020 would have been time-barred. However, Ms. Everett dual filed her charge with the SDHR and the EEOC on January 6, 2021, and therefore any adverse actions occurring one year before—i.e., after January 6, 2020-- are timely.

**POINT IV**

**DEFENDANTS YESNICK AND LISO ARE SUBJECT TO LIABILITY UNDER THE NYSHRL OR THE NYCHRL**

Ms. Everett does not dispute that individually named Defendants are not liable under Title VII as long as New York City Department of Education remains a Defendant under Title VII. However, contrary to Defendants' position, Assistant Principal Yesnick and Angela Liso remain Defendants under the NYSHRL and the NYCHRL.

The NYSHRL permits individual liability. *See Gurley v David H. Berg & Assoc.*, 2022 US Dist LEXIS 20546, at *21-23 (SDNY Feb. 2, 2022) (*citing Martin v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 17 Civ. 9721 (DLC), 2019 U.S. Dist. LEXIS 78492, 2019 WL 2053992, at *5 (S.D.N.Y. May 9, 2019), *aff'd sub nom. Martin v. New York*, 799 F. App'x 68 (2d Cir. 2020)). Section 296(6) of the NYSHRL states that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). "Based on this language, several courts in this Circuit have held that a defendant who actually participates in the conduct that gives rise to a discrimination claim pursuant to the NYSHRL may be held personally liable under the statute." *Id. (citing Martin*, 2019 U.S. Dist. LEXIS 78492, 2019 WL 2053992, at *5; *see also Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004)). However, individual liability for discrimination

claims under the NYSHRL is "limited to individuals with ownership interest or supervisors, who themselves [...] have the authority to hire and fire employees." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012).

The NYCHRL provides a broader basis for direct individual liability than the NYSHRL, in that individual liability of an employee may be found "regardless of ownership or decisionmaking power." *Malena*, 886 F. Supp. 2d at 366 (internal quotation marks and citations omitted).

Additionally, both the NYSHRL and NYCHRL provide for aider-and-abettor liability. *Id.* at 367 (citing NYSHRL § 296(6) and NYCHRL § 8-107(6)). Aider-and-abettor liability under both statutes uses the same standard and requires showing that the defendant assisted another party in violating the law and that the individual employee actually participated in the conduct giving rise to the claim. *Id* at 367-68; *see also Mauro v. New York City Dep't of Educ.*, No. 19 Civ. 4372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 76379, 2020 WL 5899522, at *8 (S.D.N.Y. Apr. 29, 2020), *report and recommendation adopted*, No. 19 Civ. 4372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 120830, 2020 WL 3869206 (S.D.N.Y. July 9, 2020).

Here, the complaint pled several allegations of discriminatory actions against Ms. Everett by AP Yesnick and Ms. Liso, including derogatory comments, intimidation, humiliation by posting an unflattering video of her without her knowledge, unfair ratings, a false disciplinary letter and promoting a toxic work environment. Accordingly, Ms. Everett's state claims against AP Yesnick and Ms. Liso should not be dismissed.

## POINT V

## PLAINTIFF HAS PLED PLAUSIBLE RACE DISCRIMINATION CLAIMS UNDER TITLE VII, NYSHRL AND NYCHRL

**A. Standard of Law**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006). *Ingram v. Nassau Health Care Corp.,* No. 17-CV-05556 (JMA)(SIL), 2019 U.S. Dist. LEXIS 49374, at *7 (E.D.N.Y. Mar. 25, 2019)

Discrimination claims under Title VII and the NYSHRL are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792 (1973). A *prima facie* case of discrimination requires a showing of "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *See McDonnell Douglas* at 802. In addition, a complaint must give "plausible support to a *minimal* inference of discriminatory motivation." *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)

A plaintiff is not required to plead a *prima facie* case to defeat a motion to dismiss. *See Littlejohn* at 312 (Courts "focus only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements … in the initial phase of a litigation.").

Claims under the NYCHRL are subject to a more liberal standard, requiring only plausible allegations that the plaintiff "was subjected to unequal treatment because of her protected

characteristic." *Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at *24 (E.D.N.Y. Sept. 21, 2015), aff'd, 652 F. App'x 44 (2d Cir. 2016) (summary order). That is, the NYCHRL does not require a "materially adverse employment action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 114 (2d Cir. 2013).

### B. Plaintiff Has Stated Valid Race Discrimination Claims

Defendants do not contest that Ms. Everett was within a protected group based on her race and qualified for the elementary school teacher position at issue, but challenge her claims that she was subjected to an actionable adverse employment action or that the conduct about which she complains occurred under circumstances giving rise to even a minimal inference of discriminatory animus (Def. Mem. at 9). Ms. Everett plainly has met her burden for both these elements to survive a motion to dismiss at this early stage of this litigation.

*1. Plaintiff has indeed suffered multiple materially adverse actions*

A plaintiff sustains an adverse employment action if she endures a "materially adverse change" in terms and conditions of employment. *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999). A "materially adverse" change might be indicated by a "material loss of benefits" or other indices unique to a particular situation. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation". *Galabya v. NY City Bd. of Educ.*, 202 F3d 636, 640 (2d Cir 2000).

"[N]egative employment evaluation letters may . . . be considered adverse," if they trigger other negative consequences in the terms and conditions of the plaintiff's employment, qualifying as a materially adverse". *Dimitracopoulos v. City of NY*, 26 F Supp 3d 200, 214 (EDNY 2014) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002)).

Defendants misstate that Ms. Everett's claims that she received poor performance ratings or a disciplinary letter do not rise to the level of adverse employment actions under either Title VII or the SHRL (Def. Mem. at 11). Ms. Everett alleges that she received negative ratings and a false disciplinary letter (*Comp;*. ¶8, 19-21), that she was excessed (*Id*. ¶4), excluded from videoconference staff meetings (*Id*. ¶24), disregarded and degraded for important school literacy events  (*Id*. ¶25), and had her probationary period extended (*Id*. ¶30).  Specifically, the complaint pled that Ms. Everett was told by her current principal that her rating at PS 31 in 2019-20 caused him to extend her tenure (*Id*. ¶30). Therefore, Ms. Everett has shown negative consequences in the terms and conditions of her employment after she received poor ratings and disciplinary letters. *see Dimitracopoulos; see also Zoulas v NY City Dept. of Educ.*, 400 F Supp 3d 25, 53 (SDNY 2019). As such, Plaintiff suffered adverse employment actions.

### 2.  *Plaintiff has alleged facts showing discriminatory intent based on race*

To defeat a motion to dismiss in a discrimination case, a plaintiff may plead discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover up discrimination, *see, e.g., Fisher v. Vassar Coll.*, 114 F.3d 1332, 1334 (2d Cir. 1997), or by otherwise creating a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination. *See Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998).  On a motion to dismiss, a plaintiff is entitled to every reasonable inference in her favor.

*See Littlejohn at 306.* "The complaint needed only to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."" *Id.* at 307 (quoting *Swierkiewicz v. Sorema, N.A.,* 5 Fed.Appx. 63 (2d Cir.2001)).

"Because 'smoking gun' evidence is rare in discrimination cases, "plaintiffs usually must rely on 'bits and pieces' of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination." *Khwaja v. Jobs,* No. 1:19-cv-07070 (JPC) (SDA), 2021 U.S. Dist. LEXIS 65884 (S.D.N.Y. Mar. 26, 2021) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).

A plaintiff may also support an inference of discrimination by showing that the employer treated plaintiff less favorably than a similarly situated employee outside her protected group. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). In order to make such a showing, the plaintiff must compare himself to employees who are "similarly situated in all material respects." *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

In the complaint, Ms. Everett has pled both direct and indirect evidence of race discrimination. Ms. Everett established that Defendants had a pattern of targeting African American teachers. AP Yesnick hired a White teacher rather than a Special Education teacher of Caribbean descent for Ms. Everett's classroom (*Id*. ¶¶15-16). Ms. Everett also provided examples of a similarly situated teacher who received similar discriminatory treatment (*Id.* ¶¶ 12, 18, 23, 26). The motivations for Defendants' actions toward Black teachers await further factual development through discovery. In addition, Ms. Everett pled specific allegations of disparate treatment as she alleged more favorable treatment of employees not in her protected class by her administration. For instance, AP Yesnick deliberately ignored Ms. Everett during workshops and school events, but congratulated White teacher Ms. Bodnar for her work, even though she was not

involved in the event but Ms. Everett was. (*Id.* ¶¶11, 24-25). Both Ms. Everett and Ms. Purvis' names were on the sip and chat literacy event flyer, yet AP Yesnick did not acknowledge Ms. Everett's work and presence in the event. Additionally, AP Yesnick disregarded Ms. Everett's expertise while unfairly complementing white teacher Ms. Liso (*Id.* ¶¶14, 19, 23, 25-27). AP Yesnick would also only talk to Ms. Everett's White coteacher rather than Ms. Everett directly (*Id.* ¶17).

Furthemore, AP Yesnick and Ms. Liso made derogatory comments towards Black teachers, including calling them "useless" (*Id.* ¶12). Ms. Liso also made fun of or mocked Ms. Everett's accent and hair at times, and even recorded her without her permission and posted an unflattering video of Ms. Everett on Snapchat without any consequence to her, supporting further evidence of race and/or national origin discrimination (*Id.* ¶20). On December 20, 2019, Defendant Liso insulted Ms. Everett by screaming "you're fucking sick, you seriously need fucking help, fuck you, you're fucking insane". In addition, Ms. Liso made fun of both Ms. Purvis and Ms. Everett regarding the way they spoke and their appearance. For example, Ms. Liso would ask Ms. Everett, while looking at her hair, "what does [her] hair really look like?" Ms. Liso did not make similar comments to Caucasian teachers. On January 19, 2018, Ms. Liso made a comment about how Ms. Everett spoke, by stating, "you talk different.". Then on January 22, 2018, Ms. Liso continued to make fun of Ms. Everett's speech when she repeated a statement Ms. Everett said by dragging her words, stating: "I don't understaaaaaaaand, you're funny Everett, I don't understaaaaaand", laughing as she was doing it. On February 12, 2018, Ms. Liso said among some of the White teachers in the school that "Ms. Purvis, I think she's slow, yeah she's definitely slow, and she talks funny, ok guuuuuuuys, ok everyoooooone. I don't know how she even got this job.'' These statements clearly present factual issues as to Defendants' intent regarding these statements that

should defeat Defendants' motion to dismiss and warrant further factual discovery. Ms. Everett has met her burden in establishing a *prima facie* claim of discrimination. She has pleaded sufficient facts to support a "minimal inference" that the adverse actions against her were motivated by discriminatory intent that should allow this case to proceed to discovery and possible trial. *See Littlejohn* at 311.

Given that Ms. Everett pleads a plausible claim of discrimination under Title VII and the NYSHRL, it follows that she also states a claim for discrimination under the NYCHRL. *See, e.g., Lenart v. Coach Inc.,* 131 F. Supp. 3d 61, 71 (S.D.N.Y. 2015); *Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126 F. Supp. 3d 301, 314 (E.D.N.Y. 2015).

### C. Plaintiff Has Pled Plausible Retaliation Claims

For a plaintiff to state a claim for retaliation, she must allege that (1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *See Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 720 (2d Cir. 2010). To qualify as an adverse employment action for purposes of a retaliation claim, the act must be one "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway v. White,* 543 U.S. 53 (2006).

As with her discrimination claims, Ms. Everett has pleaded a *prima facie* claim of unlawful retaliation. Ms. Everett engaged in a protected activity as she filed a charge of race discrimination jointly with SDHR and the EEOC on January 6, 2021. In retaliation for her SDHR/EEOC complaint, Ms. Everett had her tenure extended at her new school P.S. 63 at the end of the 2020-2021 school year.

Defendants argue that "Plaintiff filed the SDHR complaint at least five months before the alleged retaliatory act, too far to be considered the *but for* cause of the alleged retaliatory act" (Def. Mem., at 18).

However, to provide evidence of a causal connection in a retaliation case, a plaintiff typically shows "that the protected activity was followed closely by discriminatory treatment." *Eubanks v NY City Dept. of Educ.*, 2021 US Dist LEXIS 21771, at *46 (SDNY Feb. 3, 2021) (citing *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)). "In the Second Circuit, there is not a bright line defining the outer limits of the required temporal proximity: "[c]ourts have found temporal relationships as long as ten or eleven months satisfactory to support a causal connection," *Elgalad v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4849 (VSB), 2018 U.S. Dist. LEXIS 162838, 2018 WL 4572237, at *10 (S.D.N.Y. Sept. 24, 2018), although between two and four months is more common. *See Woods v. Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 529 (S.D.N.Y. 2007) (collecting cases)". *Id.*

Defendants mislead regarding the gap in the retaliation claims, given the fact that extension of probationary period happened close to a teacher's tenure date, which in Ms. Everett's case was September 9, 2021. It is possible that Defendants waited to exact their retaliation at an opportune time. The Second Circuit has stressed that courts should focus on "the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Therefore, this five month gap between the protected activity and the retaliatory action is close enough to support a retaliation claim. Accordingly, Ms. Everett's retaliation claims should not be dismissed.

### D.  Plaintiff Has Pled Plausible Hostile Work Environment Claims

To prevail on hostile work environment claims, a plaintiff must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002), (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). The standard has both objective and subjective components: "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). In determining whether a hostile environment exists, courts must look at the "totality of the circumstances." *Richardson*, 180 F.3d at 437-38.

While the standard for establishing a hostile work environment is high, this Court has repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (quoting *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997). The environment need not be "unendurable" or "intolerable". *Id.* Nor must the victim's "psychological well-being" be damaged. *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001). In short, "'the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.'" *Whidbee*, 223 F.3d at 70 (quoting *Torres*, 116 F.3d at 631).

To prevail on a hostile work environment claim under the NYSHRL, a plaintiff "must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a

specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013).

The NYCHRL is expressly "more protective" than the NYSHRL. *Bermudez v. City of New York,* 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). Employers may only avoid liability under the NYCHRL for conduct that results in an employee being treated "less well" because of her membership in a protected category, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013), when the conduct complained of constitutes nothing more than "petty slights and trivial inconveniences." *Id.* at 111.

The amended complaint pleads specific, concerted, and continuous allegations of harassment based on Ms. Everett's race. Ms. Everett received several poorly rated observations in contrast to Effective annual ratings for the 2017-18 and 2018-19 school years and being recipient of the Teachers of Tomorrow award for both school years (*Id.* ¶¶ 7-8). AP Yesnick also told Ms. Everett in an abusive manner that "teaching [was] not for [her]". Starting in 2018, and more notably during the 2019-20 school year, Ms. Everett was constantly ignored, disregarded and mocked by AP Yesnick and Ms. Liso (*Id.* ¶¶11, 17, 25), excluded from meetings (*Id.* ¶24), received negative ratings regardless of her actual performance (*Id.* ¶¶8,14-15, 23), received a false disciplinary letter (*Id.* ¶¶20-21); was disregarded and degraded for important school literacy events  (*Id.* ¶25); was negatively compared to white teachers (*Id.* ¶¶14, 19, 23, 25-27); was excessed (*Id.* ¶4); and had her probationary period extended (*Id.* ¶30). AP Yesnick and Ms. Liso made derogatory comments towards Black teachers, including "useless" (*Id.* ¶12). As detailed in Point V. B., on several occasions, Defendants made fun of Ms. Everett's accent and hair, deliberately ignored her, insulted her speech, and even recorded her without her permission and posted an unflattering video of Ms. Everett on Snapchat without any consequence to her (*Id.* ¶20).

The conditions Ms. Everett experienced were so egregious that Ms. Everett filed an OEO complaint with the NYCDOE against AP Yesnick and Ms. Liso on January 5, 2020.

As detailed in Point V. B. 2 above, Ms. Everett alleged facts to connect discriminatory intent to Defendants' actions. Accordingly, Ms. Everett has pled plausible hostile work environment claims under Title VII, the NYSHRL and the NYCHRL.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss her complaint, order the case to proceed to discovery on all material factual issues, and grant such other and further relief as the Court may deem just and proper. In the alternative, Plaintiff respectfully requests leave to amend the complaint to provide sufficient facts on which relief can be granted.


Dated: New York, New York
          February 28, 2022

                                        By:        s/ *Stephanie Everett*_____
                                                   STEPHANIE EVERETT, Plaintiff pro se

                                                   1113 East 215th Street
                                                   Bronx, NY 10469
                                                   (347) 803-0903
                                                   stef850@gmail.com