UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                     :

STEPHANIE N. EVERETT,                          :

                            Plaintiff,        :

                                                          :          21 Civ. 7043 (JPC)

            -v-                          :

                                                          :          OPINION AND

NEW YORK CITY DEPARTMENT OF EDUCATION,  :           ORDER
*et al.*,                                            :

                        Defendants.    :

                                                      :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Stephanie Everett is a New York City public school teacher.  Proceeding *pro se*, she has

sued the New York City Department of Education ("Board of Education"), Assistant Principal

Katina Yesnick, and another teacher, Angela Liso, under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law §§ 290-97, and the New York City Human Rights Law ("NYCHRL"), N.Y. City

Admin. Code §§ 8-101-31.  She alleges that Defendants discriminated against her because of her

race and that the Board of Education retaliated against her for filing an administrative complaint

alleging discrimination.  Defendants have moved to dismiss the Complaint under Federal Rule of

Civil Procedure 12(b)(6).  For the reasons below, the Court grants Defendants' motion to dismiss

but grants Everett leave to amend.

## I. Background

### A. Factual Allegations[1]

Everett is a black woman of Caribbean descent.  Compl., Addendum to Federal Complaint ("Addendum") ¶¶ 2, 10.  She began teaching first grade for the Board of Education in September 2017 at P.S./M.S. 31, a school in the Bronx.  *Id.* ¶¶ 1, 3.  While teaching at P.S./M.S. 31, Everett twice received the "Teachers of Tomorrow" award.  *Id.*  ¶ 7.  She also received "Effective" overall ratings on her annual performance evaluations for the 2017-2018 and 2018-2019 school years.  *Id.*

On March 13, 2019, a math workshop was held at another Bronx school, P.S. 179.  *Id.* ¶ 11. Everett attended the workshop, along with Yesnick, a white Assistant Principal at P.S./M.S. 31, and Liso, a white teacher at P.S./M.S. 31.  *Id.* ¶¶ 10-11.  At the workshop, Yesnick and Liso sat next to each other and "completely ignor[ed]" Everett's presence.  *Id.* ¶ 11.  When the workshop ended, Yesnick and Liso commented that a particular black second-grade literacy coach at P.S./M.S. 31 "was useless and doesn't know what she is doing."  *Id.* ¶ 12.  Around that time, Yesnick and Liso told a white literacy coach at a different school that they would try to get her a literacy coach position at P.S./M.S. 31.  *Id.* ¶ 13.

Then, beginning in the 2019-2020 school year, Everett began to receive negative ratings from Yesnick in observation reports.  *Id.* ¶ 8.  Yesnick conducted her first informal class observation of Everett on November 22, 2019.  *Id.* ¶ 14.  A few weeks later, on December 3, 2019, Everett met with Yesnick to discuss that observation.  *Id.*  At the meeting, Yesnick allegedly

---

[1] The following factual allegations, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint. Dkt. 1 ("Compl."). Because Everett is proceeding *pro se*, the Court also considers allegations asserted in her opposition to the City of New York's motion to dismiss, Dkt. 24 ("Opposition"), so long as they track the Complaint. *See Lugo-Young v. Courier Network, Inc.*, No. 10 Civ. 3197 (RRM), 2012 WL 847381, at *1 n.2 (E.D.N.Y. Mar. 13, 2012); *Richardson v. Dep't of Corr.*, No. 10 Civ. 6137 (SAS), 2011 WL 710617, at *3 n.46 (S.D.N.Y. Feb. 28, 2011).

"disregarded [Everett's] expertise as an educator[] and compared [her] to the white teacher Ms. Liso." *Id.* She did so by telling Everett that "maybe teaching is not for you, and you're lucky you have someone," appearing to refer to a teaching assistant or co-teacher, whereas "poor Ms. Liso has no one, she feels so overwhelmed, she had the high class last year, but this year Ms. Liso has the Ell's (English language learners)." *Id.* Yesnick also "disregarded [Everett's] contributions" as a teacher and said that a "Latin[a] woman of Caribbean descent," "who was supposed to work with" Everett, "did not have the right qualifications for the position." *Id.* ¶ 15.

Several days after the December 3 meeting, Everett received her literacy lesson observation, which included "ineffective [scores] in certain categories." *Id.* ¶ 19. The observation also unfavorably compared Everett to Liso. *Id.* Prior to the 2019-2020 school year, Everett never had received an ineffective rating while working at P.S./M.S. 31. *Id.* ¶ 8.

A few weeks later, on December 20, 2019, Yesnick sent Everett a disciplinary letter for failing to attend a Continuing Teacher and Leader Education ("CTLE") professional development session. *Id.* ¶ 20. The letter contended that, rather than attend the CTLE session, Everett stayed in her classroom to talk with her union representative. *Id.* ¶ 21. Everett disputes this contention, maintaining that the meeting agenda reflected that the session was to be held in her classroom and therefore she should not have been disciplined. *Id.* And the same day that Everett received the disciplinary letter, she refused a Christmas gift from Liso because of a Snapchat incident where Liso videotaped Everett without her permission and other situations in which Liso had disrespected her. *Id.* ¶ 20.

A little more than two weeks later, on January 5, 2020, Everett filed a complaint against Yesnick and Liso with the Office of Equal Opportunity & Diversity Management, which is part of the Board of Education.  *Id.* ¶ 22.[2]

Four days after filing complaint against Yesnick and Liso, Yesnick conducted her second informal observation of Everett for the school year.  *Id.* ¶ 23.  Everett again received an unfavorable rating on the observation.  *Id.*  Three weeks later, on January 27, 2020, Everett met with Yesnick to discuss the observation.  *Id.*  At the meeting, Everett told Yesnick that she would work on her lesson plans after school to grow her teaching ability.  *Id.*  Yesnick responded by "pretend[ing]" that she did not know who Everett planned with, despite having seen Everett plan with another black teacher a few days earlier.  *Id.*

In late May 2020, there was a grade-based meeting that Everett believes Yesnick "deliberately excluded" her from because of her race.  *Id.* ¶ 24.  Everett first learned about that meeting at a June 1, 2020 schoolwide videoconference.  *Id.*  And during the videoconference, Yesnick "failed to acknowledge [Everett's] presence."  *Id.* ¶ 25.  Yesnick also said during the videoconference that a particular white teacher did a great job planning that schoolwide event.  *Id.*  But the person who actually planned the event was a black teacher.  *Id.* ¶¶ 26-27.  Despite not planning the event, that white teacher took credit for doing so.  *Id.* ¶ 27.

In August 2020, Everett was transferred—known in the teaching field as being "excessed"—from P.S./M.S. 31 to P.S. 63.  *Id.* ¶ 4.  Five months later, on January 6, 2021, Everett filed a discrimination complaint with the New York State Division of Human Rights ("SDHR").  *Id.* ¶ 30.  Everett claims that in response to filing the SDHR complaint, her tenure at P.S. 63 was

---

[2] The Complaint does not contain any allegations as to the substance of this complaint, or about how it was resolved.

extended at the end of the 2020-2021 school year.  *Id*.  The Principal of P.S. 63 told Everett that her rating at P.S./M.S. 31 caused him to extend her tenure.  *Id*.

**B.     Procedural History**

On July 28, 2021, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Everett a right-to-sue letter in connection with her January 6, 2021 SDHR complaint, closing that case because Everett "wishe[d] to pursue [the] matter in Federal District Court."  Compl. at 12; *see id.* at 6.  Everett received the letter on August 3, 2021.  *Id.* at 6.  Two weeks later, on August 19, 2021, Everett commenced this action against Defendants.  She brings claims for racial discrimination, retaliation, and a hostile work environment under Title VII, the NYSHRL, and the NYCHRL.  *Id.* at 3-5.  She alleges that Defendants discriminated against her because of her race by giving her negative teaching performance ratings and a disciplinary letter, excluding her from staff meetings, failing to acknowledge her at a school event, and transferring her to another school. *See, e.g.*, Addendum ¶¶ 9, 19-20, 24-25.  And she claims that Defendants retaliated against her for filing the SDHR complaint by extending her tenure at P.S. 63.  *See id.* ¶ 30.  As relief, Everett seeks "removal of the poorly rated observations dated November 22, 2019, and January 9, 2020, from both [her] personnel file and the Advance NYCDOE website, as well as the removal of the unjustified disciplinary letter and rebuttal letter from [her] file, monetary damages, and any other relief appropriate for this situation."  *Id.* ¶ 29; *accord* Compl. at 6.  Now, Defendants have moved to dismiss the Complaint.  *See* Dkts. 19, 20 ("Motion").

## II.  Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In making this determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), but it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

Although the Court must typically construe *pro se* submissions "liberally" and interpret them "to raise the strongest arguments that they suggest," *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) (quotations omitted), Everett had "some assistance" in drafting the complaint. She sent "comments/notes to [an] attorney's office for assistance in drafting [the] [O]pposition" and "the attorney's office drafted the opposition." Dkt. 28. When, as here, the plaintiff received legal assistance in drafting the complaint and opposition brief, the plaintiff is "not entitled to the same degree of liberal construction afforded an unassisted *pro se* plaintiff." *Bizelia v. Clinton Towers Hous. Co.*, No. 20 Civ. 8065 (JPC), 2022 WL 1747763, at *3 (S.D.N.Y. May 31, 2022) (quotations omitted) (collecting cases). Still, because Everett drafted part of the Complaint herself, *see* Dkt. 28, the Court will afford some solicitude in interpreting the Complaint, *see Bizelia*, 2022 WL 1747763, at *3.

### III.   Discussion

#### A.   Threshold Hurdles to Everett's Federal Claims

##### 1.   Administrative Exhaustion

Before suing under Title VII, a plaintiff must ordinarily exhaust administrative remedies by "filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 82-83 (2d Cir.

2001) (quoting 42 U.S.C. § 2000e-5(e)). This exhaustion requirement applies with equal force to *pro se* plaintiffs. *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015). A teacher employed by New York City can exhaust her remedies by filing a complaint that asserts the claim with the SDHR, as the "State . . . agency with authority to grant . . . relief," 42 U.S.C. § 2000e-5(e)(1).

But even when a public employee does not raise a claim before an administrative agency, courts may sometime excuse the failure. One ground to do so arises when the unraised claim is "reasonably related" to claims raised before the administrative agency. *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam). A later claim is reasonably related to those in a prior administrative agency charge "if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (quotations omitted). In considering whether a charge is reasonably related, and "[p]articularly in a case brought by a *pro se* plaintiff, it is the substance of the charge and not the label that controls the court's determination whether a given charge was properly presented to the EEOC." *Williams v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 1996 (AJN), 2018 WL 4735713, at *3 (S.D.N.Y. Sept. 29, 2018) (quotations omitted).

Defendants argue that Everett failed to exhaust her administrative remedies for her Title VII retaliation claim arising from the extension of her tenure at P.S. 63, because she did not include that claim in her January 6, 2021 SDHR complaint. Motion at 4-5. But Defendants' argument fails for a simple reason: Everett alleges that Defendants retaliated against her for filing that complaint. Addendum ¶ 30; Opposition at 20-21. That means that Everett's retaliation claim falls

under the second reasonably related exception: retaliation for filing the administrative charge. Whether Everett may proceed past the motion to dismiss stage on that retaliation claim therefore depends on the claim's merits.  The Court therefore denies Defendants' motion to dismiss the retaliation claim on exhaustion grounds and will address the claim's merits below.

### 2.   Timeliness of the SDHR Charge

Defendants move to dismiss any Title VII claim that accrued before March 18, 2020[3] as time-barred.  Motion at 6-7.  A plaintiff must make the administrative filing—which, as noted above, is a prerequisite for a Title VII suit—"within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC." 42 U.S.C. § 2000e-5(e).  Because the timely filing of an administrative complaint is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," it acts as an affirmative defense that a defendant bears "the burden of pleading and proving."  *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (quoting *Zipe v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

Whether an event triggers this 300-day clock depends on the discriminatory act that the plaintiff alleges.   When, for instance, "the plaintiff alleges a discrete act of employment discrimination, including termination, failure to promote, denial of transfer, or refusal to hire, each act triggers the running of the limitations period."  *Williams*, 2018 WL 4735713, at *5 (quotations omitted).  But when "the plaintiff alleges a continuing violation like hostile work environment, she need only show that part of the violation took place within the limitations period."  *Id.* (quotations omitted).   Thus, under the continuing violation doctrine, "[w]hen a plaintiff experiences a

---

[3] As noted below, the Court calculates the effective date as March 12, 2020, given Everett's allegation that she filed her SDHR complaint on January 6, 2021.

continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last violation." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).  To trigger the continuing violation doctrine for claims of discrimination, "the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quotations omitted).  And it is worth noting "that the continuing violation doctrine is disfavored in this circuit and will be applied only upon a showing of compelling circumstances." *Ford v. N.Y.C. Bd. of Educ.*, No. 19 Civ. 6327 (JPC), 2022 WL 1063036, at *6 (S.D.N.Y. Apr. 8, 2022) (quotations omitted).

Everett filed his discrimination complaint with the SDHR on January 6, 2021.  Addendum ¶ 30.  Any allegedly discriminatory conduct must have occurred within 300 days of her filing of that administrative complaint, *i.e.*, on or after March 12, 2020.  With three exceptions, which are identified below, all of Everett's allegations of disparate treatment actions are discrete acts that occurred prior to March 12, 2020.  These include:

- At a math workshop on March 13, 2019, Yesnick and Liso "both sat next to each other, completely ignoring [Everett's] presence as they talked with each other," Addendum ¶ 11;

- After that March 13, 2019 workshop, Yesnick and Liso "falsely claimed that the kindergarten-2nd grade literacy coach," who is black, "'was useless and doesn't know what she is doing,'" *id.* ¶ 12;

- During a December 3, 2019 meeting addressing Everett's performance evaluation, Yesnick "disregarded" Everett's "expertise as an educator" and told Everett that

"maybe teaching is not for you, and you're lucky you have someone, poor Ms. Liso has no one, she feels so overwhelmed, she had the high class last year, but this year Ms. Liso has the Ell's (English language learners)," *id.* ¶ 14;

- When a special education teacher was assigned to work with Everett on January 3, 2020, "[Assistant Principal] Yesnick would only talk to [that special education teacher] and not with [Everett]," *id.* ¶ 17;

- Everett twice received negative performance evaluations in Fall 2019 and January 2020, *id.* ¶¶ 14, 23; and

- Everett was transferred to P.S. 63 the end of the 2019-2020 school year, *id.* ¶ 8.

The negative performance reviews, transfer of schools, and social slights were discrete acts. *See Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) ("Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position."); *Collins v. City of N.Y.*, 156 F. Supp. 3d 448, 458 (S.D.N.Y. 2016) (concluding that the plaintiff's claims that "she was constructively discharged and threatened with negative employment evaluations prior to [the limitations period] are discrete actions and are barred by the statute of limitations"). Thus, the above-listed alleged acts of discrimination, which all allegedly happened before March 12, 2020, fall outside the statute of limitations[4] and the Court will not

---

[4] Although not raised in Everett's Opposition, her Complaint could be liberally read to suggest that she was retaliated against for refusing a Christmas gift from Liso. *See* Addendum paragraph ("On Friday, December 20, 2019, I received an unjustified disciplinary letter from [Assistant Principal] Yesnick about not attending a CTLE professional development session, the same day I refused a Christmas gift from Ms. Liso, because of a snapchat incident, where she videotaped me without my permission, and other situations of disrespect towards me, where Ms. Liso reacted by cursing and insulting me."). Even if read as an attempt to raise an allegation of retaliation, this incident allegedly occurred on December 20, 2019 and therefore is time-barred as well.

consider those allegations in assessing Everett's claim, except as relevant background evidence. *See Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]xpiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim." (quotations omitted)).

Besides the continuing violation doctrine, Everett claims that many of her Title VII claims are not barred by the statute of limitations because of New York State Executive Order 202.67. That Executive Order, issued on October 4, 2020, "was the culmination of a series of executive orders issued by Governor Cuomo during the COVID-19 pandemic." *Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 21 Civ. 4951 (LJL), 2022 WL 624451, at *5 (S.D.N.Y. Mar. 2, 2022); *see* N.Y. Gov. Exec. Order Nos. 202.8, 202.14, 202.28, 202.38, 202.67 (2020). The Executive Order continued "[t]he suspension . . . that tolled any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the *procedural laws of the state* . . . until November 3, 2020." N.Y. Exec. Order No. 202.67 (emphasis added). While this Executive Order tolled the "procedural laws" of New York, it did not apply to Everett's Title VII claim: New York's "various executive orders issued throughout the COVID-19 pandemic did not purport to toll time periods prescribed by federal law and they were not justified by any limitation of access to the federal courts." *Romero*, 2022 WL 624451, at *5; *accord O'Rourke v. Ehsan Food Corp.*, No. 19 Civ. 6162 (LJL), 2020 WL 6894663, at *3 (S.D.N.Y. Nov. 24, 2020).

Only three allegations of disparate treatment discrimination occurred after March 12, 2020 and thus are timely: (1) in late May 2020, Yesnick excluded Everett from a meeting, Addendum ¶ 24; (2) Yesnick failed to acknowledge Everett's presence at a June 1, 2020 meeting, *id.* ¶ 20; and

(3) in August 2020, Everett was transferred to another school, P.S. 63, *id.* ¶ 4.  These three allegations thus are assessed on their merits below.

But Everett's hostile work environment claim is timely in its entirety.  At least one "act that is part of the hostile work environment claim" falls within the 300-day period.  *Harris v. NYC Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239, at *5 (S.D.N.Y. Aug. 27, 2021).  Thus, Everett is not barred from arguing that actions that happened before March 12, 2020 contributed to her hostile work environment claim.  *See id.*

### 3.  Individual Liability

With respect to Everett's Title VII claims against Liso and Yesnick, it has long been settled "that individuals are not subject to liability under Title VII."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quotations omitted).  And even Everett acknowledges that "individually named Defendants are not liable under Title VII."  Opposition at 13.  The Court therefore dismisses Everett's Title VII claims against Liso and Yesnick.

## B.  Facial Plausibility of Everett's Remaining Federal Claims

### 1.  Disparate Treatment Discrimination

The Court now turns to the merits of Everett's allegations of disparate treatment that are not time-barred.  Title VII prohibits an employer from discriminating based on a person's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Courts evaluate employment discrimination claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019).  This framework "established that the requirements of a prima facie case for a plaintiff alleging employment discrimination change as the case progresses."  *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).

At the motion to dismiss stage, a plaintiff "is not required to plead a *prima facie* case." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, the question is "whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 570). So to survive a motion to dismiss, a plaintiff must plausibly allege "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) [that she] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311 (emphasis in original); *see Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021).

The Board of Education does not dispute that Everett has satisfied the first two prongs: membership in a protected class and qualification for the position. *See* Motion at 9-15; Reply at 6-8. Turning to the third prong, for Everett to have adequately alleged an adverse employment action, she must have experienced a "materially adverse change" in the terms of employment. *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted). To have experienced this type of change, the employment action "must be more disruptive than a mere inconvenience or alteration of job responsibilities." *Id.* (quotations omitted). Such disruptions "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (cleaned up). But "courts have recognized that a negative performance evaluation, more frequent observations, letters to the file, a heavier teaching load, and other conduct that does not trigger an adverse job consequence, such as a loss of pay, are not adverse employment actions." *Harewood v. N.Y.C. Dep't of Educ.*,

No. 18 Civ. 5487 (KPF), 2021 WL 673476, at *23 (S.D.N.Y. Feb. 22, 2021), *aff'd*, 2022 WL 760739 (2d Cir. Mar. 14, 2022).

None of Everett's remaining claims entailed adverse employment action.  First, in late May 2020, Yesnick allegedly excluded Everett "from a grade-based meeting."  Addendum ¶ 24.  But "[e]xclusion from meetings . . . typically does not constitute an adverse employment action" and Everett does not allege that excluding her from that meeting "amounted to a significant diminishment of her responsibilities."  *LeeHim v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 3838 (PAE), 2017 WL 5634128, at *4 (S.D.N.Y. Nov. 21, 2017) (quotations omitted).  Second, Yesnick's alleged "fail[ure] to acknowledge [Everett's] presence" at the June 1, 2020 meeting, Addendum ¶ 25, does not qualify as an adverse employment action because "petty slights . . . [do not] amount to adverse employment actions," *LeeHim*, 2017 WL 5634128, at *4.

Nor does Everett's transfer from P.S./M.S. 31 to P.S. 63 count as an adverse employment action.  It is true that in certain circumstances, a job transfer can be an adverse employment action.  *See Galabya*, 202 F.3d at 641 (A job "transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career.").  But "a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action."  *Id.* (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

As alleged, Everett's transfer was a lateral one.  Everett claims that she worked as a first-grade teacher at P.S./M.S. 31 and as a kindergarten teacher at P.S. 63.  Addendum ¶¶ 4-5.  There are no allegations that this kindergarten teaching position "was materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement."  *Galabya*, 202 F.3d at 641.  Nor are there any other allegations suggesting that

Everett's new position was an adverse employment action, such as entailing a decrease in her pay. Without such allegations, Everett has not plausibly alleged that her transfer to P.S. 63 was an adverse employment action. *See, e.g.*, *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) (recognizing no adverse employment action when plaintiff was transferred from one office to another and there was "no allegation that the reassignment constituted a demotion or otherwise"), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Galabya*, 202 F.3d at 640 (holding that plaintiff's transfer from one special education school to another was not an adverse employment action); *Dietrich v. City of New York*, No. 18 Civ. 7544 (CM), 2020 WL 4226591, at *7 (S.D.N.Y. July 23, 2020) ("It is well-settled that a lateral transfer does not rise to the level of an adverse employment action as a matter of law, where the transfer has no impact on the employee's position, salary, or benefits." (quotations omitted)).

Thus, because most of Everett's allegations of disparate treatment are time-barred, and the remaining claims fail to allege any adverse employment action, the Court dismisses Everett's Title VII disparate treatment discrimination claim.[5]

### 2. Hostile Work Environment

The Court next turns to Everett's hostile work environment claim. Title VII prohibits "requiring people to work in a discriminatorily hostile or abusive environment." *Davis-Garett*, 921 F.3d at 41 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To state a race-based claim for a hostile work environment, the plaintiff "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment

---

[5] Because Everett fails to adequately allege any adverse employment action as to actions that are not otherwise time-barred, the Court need not address the fourth prong, *i.e.*, whether Everett adequately alleged facts suggesting an inference of discriminatory motivation.

that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's" race.  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotations omitted); *accord Harris*, 510 U.S. at 21-22.

Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* at 21 (quotations and citation omitted).  To determine whether an environment is "hostile" or "abusive," the Court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23; *accord Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).   The hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment."  *Alfano*, 294 F.3d at 374 (quotations omitted).  But "[i]solated incidents or 'episodic' stray remarks are not 'sufficiently continuous and concerted in order to be deemed pervasive.'"  *De Figueroa v. New York*, 403 F. Supp. 3d 133, 160-61 (E.D.N.Y. 2019) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Here, the Complaint alleges only discrete instances of conduct by Defendants that, even if proven to be true, would not rise to the level of a workplace permeated with discriminatory intimidation, ridicule, or insult.  For example, Everett alleges that her supervisors ignored her at two different meetings, Yesnick told her that teaching might not be the right profession for her, and Liso cursed at her on one occasion and mocked her accent and hair on a few occasions. Addendum ¶¶ 11, 14, 15; Opposition at 19.  These allegations represent distinct instances that are

16

not sufficiently "continuous and concerted" nor "severe or pervasive" to establish a hostile work environment.  *See, e.g.*, *Boyar v. Yellen*, No. 21-507, 2022 WL 120356, at *3 (2d Cir. Jan. 13, 2022) (rejecting argument that there was a hostile work environment when "supervisor (1) told [Plaintiff] to go back to his desk or she would wring his neck"; (2) yelled at him demanding his employee identification number now; (3) ignored him at a meeting; (4) yelled at him very loudly; and (5) told him he had 90 minutes to complete two certification exams, when he had 60 minutes to complete each" (cleaned up)); *Brown v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 2424 (VEC) (OTW), 2021 WL 4943490, at *12 (S.D.N.Y. Aug. 31, 2021) ("[C]ourts in this Circuit have consistently held that allegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim." (quotations and alteration omitted)), *report and recommendation adopted*, 2021 WL 4296379 (S.D.N.Y. Sept. 20, 2021); *Perez v. N.Y. State Off. of Temp. & Disability Assistance*, No. 14 Civ. 1621 (SAS), 2015 WL 3999311, at *7 (S.D.N.Y. June 30, 2015) ("Allegations of negative job evaluations or excessive reprimands are insufficient to establish a hostile environment claim." (quotations omitted)).

### 3. Retaliation

Lastly, Everett fails to adequately plead a retaliation claim under Title VII.  "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [she] has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (quotations omitted).  Although both retaliation and discrimination claims under Title VII require an adverse employment action, they do not have the same standards for what counts as an adverse employment action.  *See id.*; *Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 282 (S.D.N.Y. 2016).  For retaliation claims, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa*

*Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006).  This adverse action definition in the retaliation context "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." *Vega*, 801 F.3d at 90.

To adequately plead causation, "a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Id.* at 90-91 (citing 42 U.S.C. § 2000e–3(a)).  At the pleading stage, this requires only that a plaintiff "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.  A causal connection in retaliation claims can be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id*. at 319.  Moreover, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citation omitted).  "But-for causation does not, however,  require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (cleaned up).

The Complaint relies only on the temporal proximity between filing the SDHR complaint on January 6, 2021, and the decision at end of the 2020-2021 school year to retain Everett at P.S. 63, to support a causal inference between the two events.  *See* Addendum ¶ 30.[6]   This approximately six-month gap is too long to infer causation.  "Although there is no bright-line rule,

---

[6] The Complaint alleges that the adverse employment action entailed extending Everett's tenure at P.S. 63.  *See* Addendum ¶ 30 ("I have suffered additional retaliation by having my tenure extended at my new school, PS 63, at the end of the 2020-2021 school year.").  The Court construes that allegation to mean that Everett was unable to return to P.S. 31, and instead was required to remain at P.S. 63.

district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Harris*, 2021 WL 3855239, at *8 (cleaned up); *accord Gilford v. N.Y. State Off. of Mental Health*, No. 17 Civ. 8033 (JPO), 2020 WL 1529359, at *4 (S.D.N.Y. Mar. 31, 2020) ("Courts in this Circuit have held that the passage of two months between protected activity and adverse action can be too long, without more, to support an inference of causation.").

Everett resists this conclusion by citing Second Circuit case law finding a causal connection for temporal lapses similar to the six months that passed from the filing of her SDHR complaint and the allegedly retaliatory action. Opposition at 20-21. But in cases that have done so, other evidence suggested a causal link. For example, in *Espinal v. Goord*, the Second Circuit permitted an inference of causation despite the passage of six months between the protected speech (suing New York State Department of Correctional Services officials) and the alleged adverse action (excessive force and denial of medical treatment in prison). 558 F.3d 119, 129-30 (2d Cir. 2009). But there, the officers who allegedly retaliated against the plaintiff-inmate told him that "this is what happens to [i]nmates when they submit lawsuits against us." *Id.* at 122 (quotations omitted). When, however, there is no other evidence supporting causation, the maximum time that allows an inference of causation decreases.

Here—unlike *Espinal*—no facts suggest that the Board of Education retaliated against Everett for filing the SDHR complaint. In fact, Everett alleges facts suggesting that other considerations caused P.S. 63 to extend her tenure. Everett claims that she "was told by [her] current principal that [her] rating at PS 31 in 2019-2020 caused him to extend [her] tenure." Addendum ¶ 30. This allegation undercuts Everett's retaliation theory. Rather than retaliating against her for filing the SDHR complaint, she contends that the reason she was retained at her

current school was her poor ratings at P.S./M.S. 31.  Given all these facts, the six-month gap, without more, is therefore too significant to show a causal link.

## C.    State Law Claims

Everett also raises claims under the NYSHRL and the NYCHRL.  Under 28 U.S.C. § 1367(c)(3), the Court may "decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims."  *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 103 (2d Cir. 1998).  In determining whether to exercise supplemental jurisdiction, courts consider "the values of judicial economy, convenience, fairness and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Considering these factors, the Court declines to exercise supplemental jurisdiction over Everett's state and city law claims.  *See Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (explaining that in a typical case in which "a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well" (quotations omitted)).

## D.    Leave to Amend

Everett requests leave to amend if the Court dismisses the Complaint.  Opposition at 24. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [the litigant] has a valid claim."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotations omitted).  "[A] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (cleaned up) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010)).  Following this case law, the Court will grant Everett leave to file an amended complaint.

## IV.  Conclusion

For all the reasons given, the Court dismisses the Complaint without prejudice to filing an amended complaint.  The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 19 and to mail a copy of this Opinion to the *pro se* Plaintiff.

If Everett chooses to file an amended complaint, she must do so by July 29, 2022.  Because the amended complaint will completely replace, not supplement, the Complaint, any facts or claims that Everett wishes to maintain must be included in the amended complaint.  Thus, the Court grants Everett leave to replead any claims, including her state and city law claims, in that amended complaint.  If Everett fails to file an amended complaint by July 29, 2022 and she cannot show good cause to excuse such failure, the Court will direct the Clerk of Court to close this case.

SO ORDERED.

Dated: June 29, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge

21