UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                   :

STEPHANIE N. EVERETT,             :

                             :

              Plaintiff,       :

                             :              21 Civ. 7043 (JPC)

          -v-                 :

                             :            OPINION AND ORDER

                             :

NEW YORK CITY DEPARTMENT OF EDUCATION  :
*et al.*,                             :

                             :

             Defendants.     :

                             :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Stephanie N. Everett brings claims against the New York City Department of Education ("NYCDOE"), a co-worker, Defendant Angela Liso, and two of her former supervisors, Defendants Katina Yesnick and Reinaldo Diaz-Lens, for her treatment in, and eventual discontinuance from, the New York City public school system.  She alleges discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* (the "NYCHRL").  Defendants have moved to dismiss all claims.

      Because Title VII claims may not be brought against individuals, the Court dismisses those claims as to Liso, Yesnick, and Diaz-Lens.  Everett also has failed to allege a severe and pervasive hostile work environment based on her race, and so the Court dismisses the Title VII hostile work environment claim against the NYCDOE.  But Everett has sufficiently alleged that she was subject to an adverse employment action in the form of her termination, and has sufficiently alleged that

racial animus and retaliatory animus were the causes of that termination, so the Court denies Defendants' motion with respect to Everett's discrimination and retaliation claims against the NYCDOE under Title VII.

Turning to her state and city claims, because Everett has not filed a notice of claim or otherwise satisfied the notice of claim requirement for her NYCHRL and NYSHRL claims against the NYCDOE, the Court dismisses those claims.  Everett has also failed to allege that Liso or Yesnick were motivated by racial animus when they took any action against her, so her NYSHRL and NYCHRL claims are dismissed as to those Defendants.  Nor does Everett allege that Liso or Yesnick took any action against Everett after she engaged in any protected activity, which is fatal for her retaliation claims under the NYSHRL and the NYCHRL against those Defendants.  As for Diaz-Lens, he is not subject to primary liability under the NYSHRL as an employee of the NYCDOE, and Everett has failed to plead facts that would establish aiding and abetting liability against him, so her NYSHRL claims for discrimination and a hostile work environment against him are dismissed.  Everett has, however, sufficiently alleged claims of discrimination, retaliation, and hostile work environment under the NYCHRL against Diaz-Lens, and a retaliation claim under the NYSHRL against him, so the Court denies the motion to dismiss with respect to those claims.

In short, Everett's claims are dismissed except for her Title VII race discrimination and retaliation claims against the NYCDOE, her NYSHRL retaliation claim against Diaz-Lens, and her NYCHRL claims against Diaz-Lens.  Each dismissal is without prejudice to Everett amending her complaint one final time in the event she can remedy the deficiencies identified by the Court.

## I.  Background

### A.    Facts[1]

Everett is a black woman who has been an elementary school teacher for the NYCDOE since September 2017.  SAC Addendum ¶¶ 1-2.  From September 2017 to August 2020, she taught first grade at P.S./M.S. 31 in the Bronx.  *Id.* ¶ 3.  Everett was hired at P.S./M.S. 31 by Assistant Principal Deidra Thomas, who "provided [Everett] with assistance when needed," but Thomas left the school after the 2018-2019 school year.  *Id.* ¶ 4.  At P.S./M.S. 31, Everett was twice awarded "Teachers of Tomorrow" recognition and received "Effective" overall annual performance evaluations for the 2017-2018 and 2018-2019 school years.  *Id.* ¶ 6.

In January 2018, Everett began having difficulties with Angela Liso, a first-grade teacher at P.S./M.S. 31, who was also friends with Katina Yesnick, an Assistant Principal at the school.  *Id.* ¶ 7.  In early 2018, Liso allegedly mocked Everett's speech and told her she spoke "different," *id.*, and made similar comments about how a black literacy coach at the school spoke, *id.* ¶¶ 7-8.  Liso also allegedly made and posted a recording of Everett on Snapchat without Everett's permission, *id.* ¶ 9, and made what Everett considers "racist comments" including asking Everett "what [her] hair really looks like," *id.*  Liso and Yesnick engaged in other behavior that Everett

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Second Amended Complaint, Dkt. 36 ("SAC"), the addendum of facts attached to that document, SAC at 9-17 ("SAC Addendum"), and the addendum to Everett's New York State Division of Human Rights ("SDHR") complaint, SAC at 26-30 ("SDHR Addendum").  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

For the avoidance of doubt, the Court notes explicitly that the claims made about the conduct of Angela Liso, Katina Yesnick, Reinaldo Diaz-Lens, and others, including any comments they made in the workplace, are not facts found to be true by the Court.  They are only allegations made by Everett and are merely assumed to be true for purposes of this Order and Opinion.

believed to be discriminatory, including ignoring her at a math workshop in March 2019, making negative comments about the same black literacy coach, and making positive comments about a white math coach who Everett alleges "was rarely at the school and failed to complete her job related tasks." *Id.* ¶¶ 12-15.

In December 2019, Everett met with Yesnick to discuss an "informal observation" that had occurred the previous month. *Id.* ¶ 16. Yesnick told Everett that "maybe teaching is not for you" and expressed that Liso was overwhelmed when Everett "complained about needing assistance with students with severe emotional needs." *Id.* Yesnick gave Everett a negative rating in December 2019, despite the fact that Everett had never previously received such a rating. *Id.* ¶ 11; SDHR Addendum ¶ 11. Everett also received a disciplinary letter on December 20, 2019 which "falsely accused" her of not attending a "CTLE [*i.e.*, Continuing Teacher and Leader Education] professional development session"; Everett acknowledges she did not attend that CTLE session, yet maintains it was not her fault. SDHR Addendum ¶ 12.

Everett alleges that she complained to Yesnick four times from January to March 2020 "about needing additional assistance in the classroom for [her] students." SAC Addendum ¶ 17. Yesnick supposedly replied that "it was not her problem and [Everett] should complain to the Principal." *Id.* On March 19, 2020, Yesnick ignored Everett when Everett asked her for a schedule for online remote learning until Everett asked another teacher about the schedule, at which point Yesnick provided the information. SDHR Addendum ¶ 15. In May 2020, Yesnick excluded Everett from a meeting, and in June 2020, Yesnick "failed to acknowledge [Everett's] presence at an important school literacy event." SAC Addendum ¶ 20. Yesnick apparently failed to give credit to the aforementioned black literacy coach for organizing this event, instead giving another teacher credit. *Id.*

Everett was excessed from her position as a first-grade teacher at P.S./M.S. 31 in the summer of 2020, when she began teaching kindergarten at P.S. 63, another school in the Bronx. *Id.* ¶¶ 3, 21. Everett taught at P.S. 63 during the 2020-2021 and 2021-2022 school years. *Id.* ¶ 21. Midway through her first year at P.S. 63, on January 6, 2021, Everett filed her SDHR complaint. *Id.* ¶ 22; *see* SAC at 19-30.[2] At that time, Diaz-Lens was Everett's Principal at P.S. 63. SAC Addendum ¶ 21. At the end of the 2020-2021 school year, Diaz-Lens kept Everett on an extended probationary period at the new school due to her negative rating at P.S./M.S. 31 from the previous school year. SAC Addendum ¶ 23. Everett points to a number of incidents that she claims demonstrate "racial discrimination against [her] and other Black teachers at P.S. 63 by Principal Diaz-Lens and Julie Stengel, one of the White/Caucasian teachers who works at the school." *Id.* ¶ 29. In September 2021,[3] Diaz-Lens ignored Everett when she said good morning to him, but later greeted a white teacher. *Id.* ¶ 30. In November 2021, Diaz-Lens did not provide any feedback after observing Everett teach a lesson, but did provide positive feedback to a white teacher after Diaz-Lens observed her lesson. *Id.* ¶ 31. Diaz-Lens also "roll[ed] his eyes" when he saw Everett at the end of the day after the lesson. *Id.* In January 2022, another teacher told Everett that she thought Diaz-Lens "treats this place like a plantation, and caters to the white teachers of this school." *Id.* ¶ 32. Also that month, Diaz-Lens asked one of Everett's kindergarten students if he wanted another teacher instead of Everett to be his kindergarten teacher. *Id.* ¶ 33. Everett contends

---

[2] The parties seem to agree that Everett filed her SDHR complaint in early January 2021. *See* Dkt. 51 ("Motion to Dismiss") at 5 n.2 ("The SDHR complaint was received by the SDHR on January 12, 2021."); Dkt. 52 ¶ 2 (Defendants' counsel attaching "a true and correct copy of Plaintiff's Verified State Division of Human Rights Complaint, Case No. 10210583"), Exh. A (the SDHR complaint, sworn on January 6, 2021).

[3] Everett's Second Amended Complaint lists a number of incidents as occurring in 2022 on dates subsequent to her filing of that document. The Court assumes that those dates should be listed correctly as 2021.

that the other teacher "is non-Black and, I believe, of Latin descent." *Id.* Everett claims that this incident "showed that Principal Diaz-Lens deliberately wanted to make me look like an incompetent teacher as . . . he wanted one of my students to think of me in a negative manner as well." *Id.* ¶ 34.

Everett alleges that Stengel, a "general education teacher for the kindergarten ICT [*i.e.*, Integrated Co-Teaching] classroom and the grade team leader for kindergarten," also engaged in conduct that Everett claims was discriminatory, which largely entailed rude treatment. *Id.* ¶ 38. In one instance, Stengel "excluded [Everett] and Ms. Denny," another teacher at the school, "from talking to the other kindergarten teachers" by "stay[ing] at the front of the cafeteria away from [Everett] and Ms. Denny, and watch[ing] to make sure the other kindergarten teachers . . . stayed with her and did not make any contact with Ms. Denny and [Everett]." *Id.* ¶ 39. A similar incident supposedly occurred on March 9, 2022, when Stengel ignored Everett and Denny and instead looked at her phone. *Id.* ¶¶ 42-43. Stengel also expressed negative feelings towards her students, "the majority of whom are of color," expressed a negative opinion about a black teacher's ability to help her in the classroom, and "would also exclude [Everett] and Ms. Denny from entering her classroom to join her and the other kindergarten teachers for lunch and during [their] prep times so [they] could plan together as a grade team." *Id.* ¶¶ 46-48.

Then, Diaz-Lens allegedly again ignored Everett on June 8, 2022, and told Everett two days later, on June 10, that he could not nominate her for tenure and that instead she would be "discontinued due to low enrollment." *Id.* ¶ 50. Diaz-Lens apparently had informed Everett's union chapter leader that Everett was being excessed, not discontinued, and Everett claims that she should have been excessed and not discontinued pursuant to an agreement between the teacher's union and the NYCDOE. *Id.* ¶¶ 50-53. Denny also was discontinued, which meant that there were

no more black teachers for kindergarten or on the third floor of the school. *Id.* ¶¶ 54-55. Everett received a termination letter on June 27, 2022 from the superintendent of her school, which was to be effective as of July 8, 2022. *Id.* ¶ 57.

Essentially, Everett alleges that Defendants discriminated and created a hostile work environment against her because of her race by giving her negative teaching performance ratings and a disciplinary letter, excluding her from staff meetings, failing to acknowledge her at school, and transferring her to another school where she was treated poorly, kept on probation, and ultimately terminated. And she claims that Defendants retaliated against her for filing the SDHR complaint on January 6, 2021 by extending her time (and presumably her probation) at P.S. 63 and by terminating her after she filed this lawsuit. As relief, Everett asks that the Court "remove [the] disciplinary letter and poor observations from [her] file; have the termination letter removed from the NYCDOE system and [her] file[;] and [have her] placed in excess so [she] can be able to find other teaching positions," as well as grant "emotional distress damages and legal consultation fees." SAC at 6.

**B.    Procedural History**

On August 3, 2021, Everett received a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") in connection with her January 6, 2021 SDHR complaint, closing that case because Everett "wishe[d] to pursue [the] matter in Federal District Court." SAC Addendum ¶ 24; SAC at 18 (EEOC letter). Two weeks later, on August 19, 2021, Everett commenced this action against Defendants. Dkt. 1. This Court granted Defendants' motion to dismiss Everett's initial Complaint on June 29, 2022, Dkt. 29, determining Everett had failed to plead claims under Title VII and declining to exercise supplemental jurisdiction over the remaining

state law claims.  *See Everett v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2022 WL 2342693,

at *10 (S.D.N.Y. June 29, 2022).  The Court granted Everett leave to amend her Complaint.  *Id.*

Everett filed an Amended Complaint on July 29, 2022, Dkt. 30, and a Second Amended

Complaint on August 31, 2022, Dkt. 36.  The Second Amended Complaint brings claims for racial

discrimination, retaliation, and a hostile work environment against the NYCDOE, Liso, Yesnick,

and Diaz-Lens under Title VII, the NYSHRL, and the NYCHRL.  SAC at 3-5.  Defendants moved

to dismiss the Second Amended Complaint on December 12, 2022, Dkts. 50, 51 ("Motion"), 52.

Everett opposed that motion on January 12, 2023, Dkt. 55 ("Opposition"), and Defendants filed a

reply on January 27, 2023, Dkt. 56 ("Reply").

## II.  Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550

U.S. at 555.  In making this determination, the Court must "accept[] as true the factual allegations

in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d

541, 544 (2d Cir. 2015), but it need not "accept as true legal conclusions couched as factual

allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

Although the Court must typically construe *pro se* submissions "liberally" and interpret

them "to raise the strongest arguments that they suggest," *Meadows v. United Servs., Inc.*, 963

F.3d 240, 243 (2d Cir. 2020) (per curiam) (quotations omitted), Everett has advised the Court that

she had "some assistance" in drafting the Second Amended Complaint and the Opposition.  Dkt. 58.  The assistance in drafting the Second Amended Complaint, according to Everett, was minimal. *Id.*  Everett also sent "comments/notes to [an] attorney's office for assistance" and "the attorney's office drafted the opposition." *Id.*  When, as here, the plaintiff received legal assistance in drafting the opposition brief, the plaintiff is "not entitled to the same degree of liberal construction afforded an unassisted *pro se* plaintiff." *Bizelia v. Clinton Towers Hous. Co.*, No. 20 Civ. 8065 (JPC), 2022 WL 1747763, at *3 (S.D.N.Y. May 31, 2022) (internal quotation marks omitted) (collecting cases).  Still, because Everett contends that she largely drafted the Second Amended Complaint herself, *see* Dkt. 58, the Court will afford solicitude in interpreting that document, *see Bizelia*, 2022 WL 1747763, at *3.

### III.  Discussion

#### A.    Title VII

The Court begins with Everett's causes of action under federal law.  She alleges that Defendants violated Title VII by discriminating against her on account of her race, creating a hostile work environment based on her race, and retaliating against her for engaging in protected activity.

##### 1.        Individual Liability

As previously determined by the Court, "individuals are not subject to liability under Title VII." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation omitted); *see Everett*, 2022 WL 2342693, at *6.  Everett's Title VII claims against Liso, Yesnick, and Diaz-Lens are therefore dismissed.  Accordingly, the Court proceeds in this Section to consider Everett's claims only against the NYCDOE.

### 2.       Timeliness

Only Everett's Title VII claims that accrued on or after March 12, 2020 are timely.  *Everett*, 2022 WL 2342693, at *4-5.[4]  That means any federal claims of discrimination that accrued before March 12, 2020 are not properly before the Court.  However, with respect to Everett's Title VII hostile work environment claim, all alleged conduct may be considered so long as at least one complained of act making up the hostile work environment occurred on or after March 12, 2020. *Id.*

### 3.       Race Discrimination

The Court then turns to Everett's claim of race discrimination in violation of Title VII against the NYCDOE for allegedly discriminatory conduct that occurred on or after March 12, 2020.  To sufficiently plead discrimination under Title VII, a plaintiff must "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  Ultimately, the plaintiff must show that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Harris v. NYC Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239, at *6 (S.D.N.Y. Aug. 27, 2021) (internal quotation marks omitted).  Defendants do not appear to contest that the first two elements are satisfied here.

---

[4] As the Court explained in its prior decision, because Everett filed her SDHR complaint on January 6, 2021, "[a]ny allegedly discriminatory conduct must have occurred within 300 days of her filing of that administrative complaint, *i.e.*, on or after March 12, 2020."  *Everett*, 2022 WL 2342693, at *4 (internal citation omitted).

In evaluating the Second Amended Complaint, then, "the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega*, 801 F.3d at 87 (alteration in original) (quoting *Twombly*, 550 U.S. at 570). The plaintiff must have "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The motivation component requires only that an adverse employment decision be motivated "at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Vega*, 801 F.3d at 87 (quoting *Stratton v. Dep't for the Aging*, 132 F.3d 869, 878 (2d Cir. 1997)).

### i.        Adverse Employment Action

To allege an adverse employment action, a plaintiff must allege that she experienced a "materially adverse change" in the terms of her employment. *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). The employment action "must be more disruptive than a mere inconvenience or alteration of job responsibilities." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). Examples "include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*

As noted, Everett's Title VII race discrimination claims based on events preceding March 12, 2020 are time-barred. *See supra* III.A.2; *Everett*, 2022 WL 2342693, at *4-5. Moreover, the Court previously determined that Yesnick's exclusion of Everett from a meeting in May 2020, her failure to acknowledge Everett at a meeting in June 2020, and Everett's transfer from P.S./M.S. 31 to P.S. 63 do not constitute adverse employment actions. *Everett*, 2022 WL 2342693, at *7.

That leaves those events which occurred following Everett's transfer. Included in this timeframe are the extension of Everett's probationary period at P.S. 63 at the end of the 2020-2021 school year, SAC Addendum ¶ 23; various alleged acts by her Principal, Diaz-Lens, including ignoring Everett in September 2021, *id.* ¶ 30, declining to provide her feedback after observing her teach in November 2021, *id.* ¶ 31, rolling his eyes at her, *id.*, asking a kindergarten student in January 2022 whether he preferred another teacher, *id.* ¶¶ 33-34, and ignoring her on June 8, 2022, *id.* ¶ 49; various alleged acts by Stengel, the "grade team leader for kindergarten," including in some way preventing other teachers from speaking with Everett on two occasions and excluding Everett from entering her classroom during lunch at times, *id.* ¶¶ 39, 46-48; and Diaz-Lens's failure to nominate Everett for tenure in June 2020 and Everett's subsequent termination, *id.* ¶ 50.

Everett's discontinuance obviously constitutes an adverse employment action, and Defendants do not contend otherwise. Reply at 5. Though Defendants argue that the extension of Everett's probationary period is not an adverse employment action because it did not amount to a material adverse change in work conditions, *id.* at 6, it is plausible to infer that the extension of the probationary period resulted in Everett's eventual discontinuance. The Court therefore considers both the discontinuance and the extension of the probationary period as adverse employment actions.

The other alleged actions by Diaz-Lens and Stengel, however, do not amount to adverse employment actions. Even if proven to be true, Diaz-Lens's conduct in ignoring Everett twice, declining to provide feedback on one occasion, rolling his eyes at her, and asking a student whether he preferred another teacher does not rise above the category of "petty slights" which do not amount to adverse employment actions, *see LeeHim v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 3838 (PAE), 2017 WL 5634128, at *4 (S.D.N.Y. Nov. 21, 2017), because they are not "more disruptive

than a mere inconvenience," and did not constitute a "materially adverse change" in the terms of Everett's employment. *Sanders*, 361 F.3d at 755. While this conduct, as alleged, may have been rude, Title VII "does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Stengel's alleged conduct, to the extent it can even be considered, *see infra* III.A.4, similarly consisted of ignoring and excluding Everett. As the Court has already stated "'[e]xclusion from meetings . . . typically does not constitute an adverse employment action' and Everett does not allege that excluding her from [any] meeting "'amounted to a significant diminishment of her responsibilities.'" *Everett*, 2022 WL 2342693, at *7 (quoting *LeeHim*, 2017 WL 5634128, at *4). While Everett contends that her exclusion from these meetings "prevented a collaborative experience," SAC Addendum ¶ 46, such a consequence does not approach the level of action needed to be adverse such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha*, 548 F.3d at 78.

### ii.        Inference of Discrimination

Having determined that only Everett's discontinuance and the extension of her probationary period constitute adverse employment actions, the Court must assess whether Everett has alleged that those acts took place in circumstances giving rise to an inference of discriminatory intent. This component requires only that an adverse employment decision be motivated "at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Vega*, 801 F.3d at 87 (quoting *Stratton*, 132 F.3d at 878). One method of showing discriminatory intent is to show disparate treatment between the plaintiff and a similarly situated employee outside of the protected group. *See Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate

treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))).  However, Everett may also point to "bits and pieces of information to support an inference of discrimination, *i.e.* a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86-87 (internal quotation marks omitted).  Generally, a Court can draw an inference of discrimination from circumstances including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to [the adverse employment action]." *Littlejohn*, 795 F.3d at 312.

At this motion to dismiss stage, the Court must assume Everett's allegations to be true, and must credit all inferences from those allegations in her favor.  While a close call, assuming the truth of Everett's allegations and liberally construing her *pro se* Second Amended Complaint, and considering those allegations collectively under a "mosaic" view, Everett has sufficiently alleged circumstances at P.S. 63 that give rise to an inference of discriminatory intent.  Everett alleges that Diaz-Lens ignored her immediately before greeting a white teacher, SAC Addendum ¶ 30; provided no feedback after observing one of Everett's classes, instead rolling his eyes at her later in the day, yet provided positive feedback to a white teacher whose lesson Diaz-Lens also had observed, *id.* ¶ 31; and asked one of Everett's kindergarten students whether he would prefer another, non-black teacher in front of Everett, *id.* ¶¶ 33-34.  Diaz-Lens also allegedly told Denny, the only other black kindergarten teacher, that Denny was "not the right fit for this school" as he informed her that she was being terminated.  *Id.* ¶ 54.  In isolation, and without more context, this

"not the right fit" statement may not reflect discriminatory animus.  And ultimately (assuming it was in fact said), this statement may very well be determined by the fact-finder to be entirely race-neutral.  But at this motion to dismiss stage, with all inferences concerning that statement drawn in Everett's favor and without any discovery shedding light to the context or meaning of Diaz-Lens's alleged statement to Denny, it adds to the "mosaic" of alleged discriminatory intent.  *See Abrams v. Dep't of Pub. Safety,* 764 F.3d 244, 253 (2d Cir. 2014) (discussing phrases like "better fit" and "fitting in" as potentially referring to race); *Mauro v. N.Y.C. Dep't of Educ.*, No. 21-2671, 2022 WL 17844438, at *2 (2d Cir. Dec. 22, 2022) (same).  Further, the simultaneous discontinuance of both Everett and the only other black kindergarten teacher allegedly left only white kindergarten teachers for the 2022-2023 school year.  SAC Addendum ¶ 55.  And finally, another black employee of the school also allegedly told Everett that in the employee's experience, Diaz-Lens treated white teachers more favorably than black teachers.  *Id.* ¶ 32.  The teacher's underlying basis for this view—assuming it could be presented in a manner that avoids hearsay issues—may further establish discriminatory animus on the part of Diaz-Lens.  Taken together, these allegations sufficiently nudge Everett's *pro se* claims across the line from conceivable to plausible, the standard the Court must employ at this stage.  *See Matthew v. Texas Comptroller of Pub. Accounts*, No. 21 Civ. 5337 (JPC), 2022 WL 4626511, at *5 (S.D.N.Y. Sept. 30, 2022).

The Court therefore determines that Everett has plausibly alleged a claim of race discrimination against the NYCDOE under Title VII.

### 4.      Hostile Work Environment

The Court turns next to Everett's Title VII hostile work environment claim against NYCDOE, beginning with what conduct may be considered in connection with that claim.

### i.      Attributable Conduct

In hostile work environment claims under Title VII, an employer's liability turns on whether the primary violator was a supervisory or non-supervisory employee. *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015). If the employee is a supervisor, then an employer is "strictly liable" for a "tangible employment action" but can escape liability for other actions by "establishing, as an affirmative defense that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). For conduct of a non-supervisor, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Wiercinski*, 787 F.3d at 113. An employee is a supervisor when she is "empowered by the employer to take tangible employment actions against the victim." *Vance*, 570 U.S. at 424.

Everett has sufficiently alleged that Yesnick, an Assistant Principal, and Diaz-Lens, a Principal, were supervisors due to their positions at her schools. *See* SAC Addendum ¶¶ 5, 21. But Everett alleges that Stengel was a "grade team leader," *id.* ¶ 38, which is not sufficient to allege that Stengel was empowered to take tangible employment action against her. The same is true of Liso, who is alleged to have been another teacher at P.S./M.S. 31. *Id.* ¶ 5. Because Everett has not alleged that the NYCDOE knew about Stengel's or Liso's conduct or should have known about it and failed to take appropriate remedial action, the Court does not consider conduct by Stengel

and Liso in its analysis of the sufficiency of Everett's Title VII hostile work environment claim against the NYCDOE.

### ii.    Analysis

Under Title VII, "[t]o state a . . . claim for a hostile work environment, the plaintiff 'must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Everett*, 2022 WL 2342693, at *7 (second ellipsis in original) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

"A hostile work environment is created '[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Moore v. DeJoy*, No. 18 Civ. 9967 (JPC), 2021 WL 4523503, at *5 (S.D.N.Y. Sept. 30, 2021) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). To determine whether an environment is "hostile" or "abusive," a court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). But "[i]solated incidents or 'episodic' stray remarks are not 'sufficiently

17

continuous and concerted in order to be deemed pervasive.'" *De Figueroa v. New York*, 403 F. Supp. 3d 133, 160-61 (E.D.N.Y. 2019) (quoting *Terry*, 336 F.3d at 148).

Yesnick's alleged conduct consisted of ignoring Everett three times in two years, *id.* ¶¶ 12, 20; SDHR Addendum ¶ 15, giving Everett a negative review and a disciplinary letter in December 2019, SAC Addendum ¶ 11; SDHR Addendum ¶ 12, and failing to provide additional support to Everett, SAC Addendum ¶ 17. Diaz-Lens, for his part, allegedly kept Everett on an extended probationary period in June 2021, *id.* ¶ 23, ignored Everett twice, *id.* ¶¶ 30, 50, declined to provide Everett with feedback after observing her teach in November 2021, *id.* ¶ 31, rolled his eyes at her, *id.*, asked a student if he would prefer another "non-Black" teacher, *id.* ¶ 33, and eventually discontinued Everett, *id.* ¶ 50.

Even considered all together,[5] the Court determines that this conduct, all of which was facially racially neutral, is not sufficiently severe and pervasive to constitute a hostile work environment on the basis of Everett's race. These events occurred over the course of over four years and do not demonstrate sufficiently continuous and concerted conduct to have altered the terms of Everett's employment. At worst they show that Everett was subject to occasional comments and rudeness which were not explicitly racial, and that over the course of those four years she received one negative review (and two positive reviews), one disciplinary letter, and her termination, again without any explicit racial comments.[6] This alleged conduct, even assumed to

---

[5] These allegations may more properly be treated as two separate hostile work environment claims, one at P.S./M.S. 31 and one at P.S. 63. *See Little v. Nat. Broad. Co.,* 210 F. Supp. 2d 330, 374-75 (S.D.N.Y. 2002) (treating events as two separate hostile work environments under Title VII when the plaintiff was assigned from one location to another within the same employer). But since the Court determines that the alleged conduct is not sufficient to constitute a hostile work environment even taken together, it need not reach that issue.

[6] While the Court has determined that there are sufficient allegations in the Second Amended Complaint to raise an inference of discriminatory intent with respect to Everett's firing,

be true, was infrequent, not particularly severe, not physically threatening or humiliating, and generally did not interfere with Everett's work.  Courts have dismissed significantly worse allegations of a hostile work environment.  *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (holding that no hostile work environment existed even though the "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08 Civ. 7586 (GBD), 2011 WL 4000997, at *11-12 (S.D.N.Y. Aug. 19, 2011) (granting the defendants' motion for summary judgment and holding that, for one plaintiff, "diminished [] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an employee making racially offensive remarks outside plaintiff's presence were insufficient to establish a hostile work environment, and, for another plaintiff, "den[ying] him time off and order[ing] him to never ask for time off again," "t[aking] away his job responsibilities and exclud[ing] him from important meetings with contractors," "yell[ing] at him in front of staff to get out when he showed up at meetings," and "br[inging him] up on disciplinary charges" were insufficient to constitute a hostile work environment claim where only one comment was facially discriminatory), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

5.    **Retaliation**

To demonstrate a *prima facie* case of retaliation under Title VII, "a plaintiff must establish: (1) that she participated in an activity protected by Title VII, (2) that her participation was known

---

*see supra* III.A.3.ii, the conduct considered in that analysis is not enough to constitute a severe and pervasive hostile work environment on the basis of Everett's race.  Those discrete actions are instead better treated as a discrimination claim.  *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19 Civ. 10256 (GHW), 2020 WL 6274826, at *27 (S.D.N.Y. Oct. 24, 2020) (discussing difference between the two claims).

to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Harris*, 2021 WL 3855239, at *8 (internal quotation marks omitted). "Protected activities under Title VII include employee complaints about employer discrimination." *Moncrief v. N.Y. Pub. Libr.*, No. 05 Civ. 2164 (TPG), 2007 WL 2398808, at *5 (S.D.N.Y. Aug. 17, 2007), *aff'd*, 343 F. App'x 627 (2d Cir. 2009). Furthermore, "[a] plaintiff must also ordinarily plead that the defendant had knowledge of the protected activity." *Cardwell*, 2021 WL 4434935, at *29 (internal quotation marks omitted). "A plaintiff may meet this pleading standard by pleading facts that permit the Court to 'reasonably infer that she engaged in protected activity known to the Defendants.'" *Id.* (quoting *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 57 n.8 (S.D.N.Y. 2019)).

Although both retaliation and discrimination claims under Title VII require an adverse employment action, they do not have the same standards for what counts as an adverse employment action. *See Vega*, 801 F.3d at 90 (internal quotation marks omitted); *Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 282 (S.D.N.Y. 2016). For retaliation claims, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry.*, 548 U.S. at 57. This adverse action definition in the retaliation context "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." *Vega*, 801 F.3d at 90.

To adequately plead causation, "a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Id.* at 90-91 (citing 42 U.S.C. § 2000e–3(a)). At the pleading stage, this requires only that a plaintiff "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. A causal connection in retaliation

claims can be pleaded "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id*. at 319.  Moreover, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citation omitted).  "But-for causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (cleaned up).

Everett alleges two protected activities in this case.  The first is her filing of the SDHR complaint on or about January 6, 2021, and the second is her filing of this lawsuit on August 18, 2021.  SAC Addendum ¶¶ 22, 25.  With respect to adverse employment actions, she points to the extension of her probationary period at the end of the 2020-2021 school year, her discontinuance in June 2022, and her claim that she was subjected to a hostile work environment.[7]  Opposition at 18.

Defendants argue that Diaz-Lens was not aware of the SDHR complaint at the time that he extended Everett's probationary period, Motion at 19, that too much time had passed between those events to show a retaliatory motive, *id.* at 20, and that too much time likewise passed between Everett filing this action in August 2021 and her discontinuance in June 2022, *id.*  Everett does not contend that Diaz-Lens knew of the SDHR complaint prior to extending her probationary period at the end of the 2020-2021 school year, *see* Opposition at 18; *see also generally* SAC Addendum;

---

[7] As discussed, Everett has not sufficiently alleged a hostile work environment for purposes of Title VII.  *See supra* III.A.4.

she argues only that Diaz-Lens knew of the SDHR complaint by October 2021, Opposition at 18. This is insufficient to allege that Diaz-Lens knew of Everett's protected activity when he extended the probationary period. *See Peas v. City of New York*, No. 19 Civ. 7693 (KPF), 2021 WL 2651400, at *14 (S.D.N.Y. June 28, 2021) (analyzing whether the individual who took action against the plaintiff was personally aware of the protected activity); *Iverson v. Surber*, No. 13 Civ. 633 (RA), 2014 WL 12908065, at *6 (S.D.N.Y. Mar. 19, 2014) ("A causal connection necessarily requires 'that the individuals who engaged in retaliation had knowledge of the protected conduct.'" (quoting *Van Dunk v. Brower*, No. 11 Civ. 4564 (ER), 2013 WL 5970172, at *9 (S.D.N.Y. Nov. 7, 2013))).

With respect to the discontinuance, Defendants are correct that ten months—the approximate length of time from Everett's filing of this lawsuit and her termination—ordinarily would be too long of a time gap to establish causation. *See Brown v. City of New York*, No. 14 Civ. 2668 (PAE), 2014 WL 5861995, at *2 (S.D.N.Y. Nov. 11, 2014) ("District courts within the Second Circuit have consistently held that the passage of two or three months between the protected activity and the adverse employment action does not allow for an inference of causation." (internal quotation marks omitted)), *aff'd*, 622 F. App'x 19 (2d Cir. 2015). However, the Second Circuit has also stated that "the permissible inferences that can be drawn from temporal proximity [depend on] the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (holding that a six-month passage of time between the protected activity and the retaliatory attack was sufficient because it was "plausible that the officers waited to exact their retaliation at an opportune time"). Here, Diaz-Lens discontinued Everett at the end of the first completed school year following her filing of this action. It is entirely plausible that the termination, which appears to have occurred at the same time that terminations and grants of tenure regularly occurred, *see*

SAC Addendum ¶¶ 57-58, was the "opportune time" to exact retaliation for her filing of this lawsuit. Additionally, there are some allegations suggesting that Diaz-Lens used a pretextual reason to justify the discontinuance. Diaz-Lens allegedly informed Everett that the discontinuance was "due to low enrollment" *id.* ¶ 50, but Everett alleges that the proper response to low enrollment was to excess, not discontinue, teachers, *id.* ¶ 52, and Diaz-Lens allegedly told Everett's union chapter leader that Everett was being excessed, not discontinued, *id.* ¶ 51. The Court determines that these allegations are sufficient to plausibly allege that Everett's termination would not have occurred but for her filing of this action. Therefore, the motion to dismiss Everett's Title VII retaliation claim against the NYCDOE is denied.

**B.      State and City Law Claims**

The Court next turns to Everett's claims against Defendants under the NYSHRL and the NYCHRL. As with her federal claims, Everett alleges race discrimination, a hostile work environment, and retaliation in violation of state and city law.

**1.      Notice of Claim Requirement**

The Court begins with a threshold problem with Everett's NYSHRL and NYCHRL claims against the NYCDOE. New York Education Law section 3813(1) requires a plaintiff to serve a notice of claim prior to initiating a lawsuit against a school, a school district, a board of education, or an education officer. *See* N.Y. Educ. Law § 3813(1); *Rodriguez v. Int'l Leadership Charter Sch.*, No. 08 Civ. 1012 (PAC), 2009 WL 860622, at *5 (S.D.N.Y. Mar. 30, 2009) ("[F]ulfillment of the statutory requirements for filing a notice of claim is a condition precedent to bringing an action against a school district or a board of education and, moreover, failure to present a claim within the statutory time limitation . . . is a fatal defect." (alterations in original) (internal quotation marks omitted)). Everett does not contest that she failed to serve a notice of claim, but she appears to argue that her administrative charge satisfies the notice of claim requirement. Opposition at 4.

"An EEOC charge can suffice as a substitute for a notice of claim 'only under the rare and limited circumstance where the EEOC charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period.'" *Rettino v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 5326 (JGK), 2020 WL 4735299, at *5 (S.D.N.Y. Aug. 14, 2020) (quoting *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10 Civ. 10 (LDW), 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010)). "The plaintiff must allege compliance with the notice-of-claim provision of the Education Law in the complaint." *Id.* (citing *Hartley v. Rubio*, 785 F. Supp. 2d 165, 184-85 (S.D.N.Y. 2011)).

Everett does not allege that she served any notice of claim. Nor does she allege that she served any SDHR or EEOC complaint on the governing board of the district. Starting with claims that accrued after her January 6, 2021 SDHR complaint, the New York Court of Appeals has squarely held that a plaintiff must satisfy the notice of claim requirement, even for new claims in an ongoing litigation of which the litigation itself provided notice. *See Varsity Transit, Inc. v. Board of Educ. of City of N.Y.*, 840 N.E.2d 569, 571 (N.Y. 2005) (requiring party to file new notice of claim every three months to cover claims which occurred after the onset of litigation). Therefore, any claim against the NYCDOE under the NYSHRL or the NYCHRL that accrued after her January 6, 2021 SDHR complaint must be dismissed for failure to satisfy the notice of claim requirement.

With respect to any claims from before January 6, 2021, Everett attaches a copy of her SDHR complaint to her Second Amended Complaint.[8] *See* SAC at 19-30. As noted, Everett does

---

[8] It is unclear from the allegations in the Second Amended Complaint whether Everett also filed an EEOC charge of discrimination, but in any event the content of any such charge is not alleged, nor is the service of that charge on any entity.

not allege that she served this complaint on the governing board of the district.  Further, having reviewed that document, the Court determines that it cannot serve as a substitute for any notice of claim with respect to claims currently alleged based on the conduct of Liso.  The SDHR complaint provides almost none of the factual content alleged in the Second Amended Complaint related to Liso's conduct, and furthermore says nothing about a NYCHRL claim.  *See* SDHR Addendum. Because, as discussed *infra* in the following section, the Court determines that the conduct attributed to Yesnick cannot make out an NYSHRL or NYCHRL claim, the Court need not resolve whether the SHDR Complaint satisfies the notice of claim requirement with respect to that conduct.

###   2.      Discrimination and Hostile Work Environment

Both New York State and New York City law prohibit employment discrimination on the basis of race.  Section 296(1)(a) of the NYSHRL makes it "an unlawful discriminatory practice . . . [f]or an employer, . . . because of an individual's . . . race . . . to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."  NYSHRL § 296(1)(a).  Under the NYCHRL, it is "an unlawful discriminatory practice . . . for an employer or an employee or agent thereof, because of the actual or perceived . . . race . . . of any person . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment."  NYCHRL § 8-107(1)(a).  This statutory language is thus similar to the corresponding language in the NYSHRL, except that the City provision extends to employees.

Prior to 2019, "discrimination claims under the NYSHRL and Title VII were generally treated as analytically identical, and addressed together."  *Edelman v. NYU Langone Health Sys.*, No. 21 Civ. 502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (internal quotation marks omitted).  In 2019, however, the NYSHRL was amended.  *See* 2019 N.Y. Sess. Laws chap. 160.  In relevant part, that amendment did not change the text of the NYSHRL's operative

provisions; instead, it amended the section governing the statute's construction, which now provides that "[t]he provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300 (2023).  While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, courts in this District have interpreted the amendment as "render[ing] the standard for claims closer to the standard of the NYCHRL," *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021), which contains similar language mandating liberal construction "regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed," N.Y.C. Admin. Code § 8-130(a).  The Court therefore considers Everett's NYCHRL and NYSHRL claims together.

"Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F. 3d 102, 109 (2d Cir. 2013)).  In particular, the standard for a discriminatory act under the NYCHRL is more lenient than the federal standard.  A plaintiff need only show that she was "treated . . . less well, at least in part for a discriminatory reason." *Khwaja v. Jobs to Move Am.*, No. 19 Civ. 7070 (JPC), 2021 WL 3911290, at *3 (S.D.N.Y. Sept. 1, 2021) (quoting *Mihalik*, 715 F.3d at 110 n.8). The severity and pervasiveness of conduct is "relevant only to the issue of damages" and "the challenged conduct need not even be 'tangible (like hiring or firing).'" *Mihalik*, 715 F.3d at 110

(quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009)).  It is sufficient to show "differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014).  Additionally, while truly trivial conduct may not be actionable under the NYCHRL, the "employer has the burden of proving the conduct's triviality under the NYCHRL" as an affirmative defense. *Mihalik*, 715 F.3d at 111.  As the New York Court of Appeals explained in *Doe v. Bloomberg L.P.*, 167 N.E.3d 454, 460 (N.Y. 2021), for purposes of the NYCHRL, employees "may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."

As for a hostile work environment claim, prior to 2019, NYSHRL and Title VII hostile work environment claims were analyzed in the same manner.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013).  But in addition to changing the required construction of the NYSHRL, the 2019 amendment added a new provision, codified at section 296(1)(h), which makes it

> an unlawful discriminatory practice . . . (h) [f]or an employer, . . . to subject any individual to harassment because of an individual's . . . race . . . [or] national origin . . . regardless of whether such harassment would be considered severe or pervasive . . . .  Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.

N.Y. Exec. Law § 296(1); *accord* 2019 N.Y. Sess. Laws chap. 160 § 2.  This has the effect of eliminating any requirement that "harassing or discriminatory conduct be 'severe or pervasive' for it to be actionable and [adopting] instead a more protective standard that prohibits conduct that results in 'inferior terms, conditions or privileges of employment.'" *Maiurano v. Cantor Fitzgerald Sec.*, No. 19 Civ. 10042 (KPF), 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021)

(quoting N.Y. Exec. Law § 296(1)(h)).  NYCHRL hostile work environment claims are analyzed

the same way as NYCHRL discrimination claims.  *See Verne v. N.Y.C. Dep't of Educ.*, No. 21 Civ.

5427 (JPC), 2022 WL 4626533, at *17 (S.D.N.Y. Sept. 30, 2022).

Finally, a corporate employee, even if she holds the title of manager or supervisor, is not

subject to suit for discrimination under the NYSHRL.  *See Patrowich v. Chem. Bank*, 473 N.E.2d

11, 12 (N.Y. 1984) (per curiam); *accord Bloomberg*, 167 N.E.3d at 459 ("[A] corporate employee

simply does not qualify as an 'employer,' regardless of the employee's position or relationship to

the employer" under the NYSHRL.); *id.* ("Accordingly, we held in *Patrowich* that the State HRL

does not render employees liable as individual employers.").  Liso, Yesnick, and Diaz-Lens are

therefore not subject to direct individual liability under NYSHRL section 296(1).  *See Fellah v.

City Univ. of N.Y.*, No. 20 Civ. 6423 (JPC), 2022 WL 4619902, at *7 (S.D.N.Y. Sept. 30, 2022).

However, the NYSHRL does provide for aiding and abetting liability in that it makes it "an

unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of

any of the acts forbidden under this article, or to attempt to do so."  NYSHRL § 296(6).  Section

8-107(6) of the NYCHRL contains nearly identical language.  To state a claim for aiding and

abetting discrimination under the NYSHRL, a plaintiff must allege that the defendant actually

participated in the unlawful conduct such that "the aider and abettor share the intent or purpose of

the principal actor."  *Rahman v. Limani 51, LLC*, No. 20 Civ. 6708 (KMW), 2022 WL 3927814,

at *7 (S.D.N.Y. Aug. 31, 2022) (internal quotation marks omitted); *see also McHenry v. Fox News

Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (same).[9]  "The same standard governs

aiding and abetting claims under the NYSHRL and NYCHRL 'because the language of the two

---

[9] A plaintiff must also plead the existence of an employer and actions by the employer in violation of the human rights laws.  *McHenry,* 510 F. Supp. 3d at 68 n.7 (citing *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415 (2d Dep't 1998)).

laws is virtually identical.'" *McHenry*, 510 F. Supp. 3d at 68 (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)).

Starting with Yesnick, Everett accuses Yesnick of giving her an ineffective rating, SAC Addendum ¶ 11, ignoring her twice, *id.* ¶¶ 12, 20, negatively comparing her to Liso, *id.* ¶ 16, failing to respond to Everett's complaints that she needed more help, *id.* ¶ 17, and excluding her from a meeting, *id.* ¶ 19. These racially neutral allegations do not provide a sufficient basis to infer that Yesnick took any action to any decree motivated by Everett's race. The closest that Everett comes to such an allegation is Everett's claim that Yesnick told her "maybe teaching is not for you" when Everett asked for assistance, while also saying that Liso, a white teacher, needed help. *Id.* ¶ 16. But Everett has not alleged sufficient information about this situation to establish Liso as "similarly situated in all material respects," *Reddy v. Salvation Army*, 591 F. Supp. 2d 406, 422 (S.D.N.Y. 2008), as in fact Everett's allegations tend to show that Liso taught a different type of class than Everett, because Liso taught the "English Language Learners," SAC Addendum ¶ 16. The same issue exists for the alleged June 1, 2020 incident when Yesnick apparently failed to give credit to a black teacher for planning an event, and gave credit to a white teacher instead. *Id.* ¶ 20. Everett provides no further context for this allegation, or how the two teachers' roles and performances in planning the event compared. Because Everett has not established that Yesnick took any action even in part motivated by her race, Everett's claims against Yesnick for discrimination and a hostile work environment under the NYCHRL must fail. So too must her claims for aiding and abetting under either the NYSHRL or the NYCHRL, as Everett has not alleged that Yesnick shared the intent or purpose of any principal actor.

Liso's primary alleged conduct is that she twice made fun of Everett's speech patterns, SAC Addendum ¶ 7, made similar comments about another black teacher's speech patterns, *id.*

¶ 8, recorded a video of Everett and posted it online "to humiliate" her, *id.* ¶ 9, asked Everett "what [her] hair really looks like," *id.* ¶ 9, ignored Everett at an event in March 2019, *id.* ¶ 12, and commented that another black teacher was "useless," *id.* ¶ 13. Ultimately, the Court concludes that Everett has failed to allege that this conduct was motivated by Everett's race sufficient to support a primary claim under the NYCHRL. Each statement was facially neutral, and courts have regularly dismissed claims based on such statements when plaintiffs fail to provide context for why the words are codes for racial stereotypes. *See LeeHim,* 2017 WL 5634128, at *7 (collecting cases).

Nor may Liso be held liable on an aiding and abetting theory under the NYSHRL or the NYCHRL. Based on the allegations in Everett's Second Amended Complaint, Liso could only have aided and abetted a primary violation by either Yesnick or by the NYCDOE. But, as discussed, Yesnick is not subject to primary violator liability under the NYSHRL, as an employee, and regardless the Court has determined that Yesnick is not alleged to have taken any action motivated by Everett's race. For this later reason, the NYCDOE also cannot be liable under the NYSHRL on the basis of Yesnick's actions. That leaves only the possibility that Liso might be liable for aiding and abetting a primary violation of the NYSHRL or the NYCHRL which was caused by her own actions.[10] But the Court has determined that Liso's alleged actions do not sufficiently plead an NYCHRL claim, and regardless an individual cannot be subject to liability for aiding and abetting an employer's primary violation if that violation consisted merely of the individual's own conduct. *See Boyce v. Weber*, No. 19 Civ. 3825 (JMF), 2020 WL 5209526, at *2 (S.D.N.Y. Sept. 1, 2020).

---

[10] The Court need not resolve the question of whether an individual may be held liable under an aiding and abetting theory when claims cannot be brought against a primary violator due to a technical default.

As for Diaz-Lens, because the Court has determined that his alleged conduct was sufficient to state a claim for discrimination under the Title VII standard, it necessarily is sufficient to state a claim under the more lenient NYCHRL standard for both race discrimination and a hostile work environment.  But Everett's allegations do not make out a claim with respect to aiding and abetting liability under the NYSHRL for Diaz-Lens.  Such a claim cannot be based entirely on Diaz-Lens's own conduct, and Everett does not allege that Diaz-Lens had knowledge of the conduct of any other actor whose conduct might make out a primary violation such that he could be said to "share the intent or purpose of the principal actor."  *Rahman*, 2022 WL 3927814, at *7.

Therefore, the Court dismisses the NYSHRL discrimination and hostile work environment claims against Diaz-Lens, Yesnick, and Liso, as well as the NYCHRL discrimination and hostile work environment claims against Yesnick and Liso.  Everett's NYCHRL discrimination and hostile work environment claims against Diaz-Lens survive dismissal.

### 3.      Retaliation

NYSHRL section 296(7) makes it "an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. Law § 296(7).  The 2019 amendment also has relaxed the standard for NYSHRL retaliation claims.  As stated, the test under the NYSHRL prior to the 2019 amendment was the same as that under Title VII, *see, e.g.*, *Hawkins v. N.Y. State Off. of Mental Health*, 845 F. App'x 9, 10 (2d Cir. 2021); the NYSHRL test for retaliation only has become easier to satisfy than Title VII following that

amendment.[11]  Thus, a party that plausibly alleges retaliation in violation of Title VII also satisfies

the NYSHRL and the "more permissive NYCHRL retaliation standard." *Friederick v. Passfeed,*

*Inc.*, No. 21 Civ. 2066 (RA), 2022 WL 992798, at *11 (S.D.N.Y. Mar. 31, 2022) (internal quotation

marks omitted).

The NYCHRL imposes an identical standard to that of the NYSHRL except "the plaintiff

need not [allege] any 'adverse' employment action; instead, she must prove that something

happened that would be reasonably likely to deter a person from engaging in protected activity."

*Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020) (alteration omitted).

For both NYSHRL and NYCHRL retaliation claims, this causal connection can be shown

temporally.  *Mooney v. City of New York*, No. 18 Civ. 328 (DLC), 2018 WL 4356733, at *9

(S.D.N.Y Sept. 12, 2018).  "To survive a motion to dismiss [a retaliation claim under the

NYCHRL], a plaintiff need only allege that retaliatory animus played some role in the employer's

decision." *Cardwell,* 2021 WL 4434935, at *32.

> i.       **Yesnick and Liso**

Because none of Yesnick or Liso's conduct occurred after Everett filed her SDHR

complaint on January 6, 2021 or commenced this litigation on August 19, 2021, Dkt. 1, no claim

against them for retaliation under the NYSHRL or the NYCHRL can survive.  Therefore, and

given that the Court already has dismissed Everett's federal claims against Yesnick and Liso, as

well as Everett's NYSHRL and NYSCHRL race discrimination and hostile work environment

claims against them, Everett's claims against Yesnick and Liso are dismissed in their entirety.

---

[11] Because the Court determines that the less permissive Title VII retaliation standard is
satisfied here, it need not determine exactly how the 2019 amendment altered the relevant standard
under the NYSHRL.

### ii.       Diaz-Lens

Because Everett has established a retaliation claim under Title VII against the NYCDOE, and because that claim was based entirely on Diaz-Lens's alleged conduct, the Court determines that Everett has adequately alleged retaliation claims against Diaz-Lens under the more lenient standards of the NYSHRL and the NYCHRL.

## C.       Leave to Amend

Everett requests leave to amend if the Court dismisses the Complaint.  Opposition at 19. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [the litigant] has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotations omitted).  "[A] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (cleaned up) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

The Court has previously granted Everett leave to amend her complaint.  However, the Court's previous opinion dismissing the original complaint did not address Everett's state law claims, and did not address a large portion of the conduct which occurred once Everett had transferred schools.  For that reason, the Court will grant Everett leave to amend her Second Amended Complaint one final time in the event she can remedy the deficiencies identified above. The Court emphasizes, however, that Everett should amend only if she is able to resolve the pleading deficiencies outlined in this Opinion and Order.

## IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part and denies it in part.  The Court dismisses Everett's Title VII claim against the individual Defendants, and her Title VII claim for a hostile work environment against the NYCDOE.  The Court dismisses all of Everett's NYCHRL and NYSHRL claims against the NYCDOE, Yesnick, and Liso.  The Court also dismisses Everett's NYSHRL claims for a hostile work environment and discrimination against Diaz-Lens.  The Court denies Defendants' motion with respect to Everett's Title VII discrimination and retaliation claims against the NYCDOE, her NYSHRL and NYCHRL claims for retaliation against Diaz-Lens, and her NYCHRL discrimination and hostile work environment claims against Diaz-Lens. Each of these dismissals is without prejudice to Everett amending her Second Amended Complaint.  If Everett wishes to amend her Second Amended Complaint, she must do so within thirty days of this Opinion and Order.  Because any third amended complaint will completely replace, not supplement, the Second Amended Complaint, any facts or claims that Everett wishes to make maintain must be included in that amended complaint.  If a third amended complaint is not filed within thirty days of this Opinion and Order, the Court will dismiss with prejudice each of the dismissed claims and terminate Liso and Yesnick from this action.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 50.

SO ORDERED.

Dated: August 30, 2023
      New York, New York

JOHN P. CRONAN
United States District Judge